## CALLEN *v.* PENNSYLVANIA RAILROAD CO.

No. 331.   Argued December 18, 1947.—Decided January 12, 1948.

*B. Nathaniel Richter,* by special leave of Court, *pro hac vice,* argued the cause for petitioner. With him on the brief was *John H. Hoffman. Edward J. Griffiths* was also of counsel.

*Philip Price* argued the cause for respondent. With him on the brief was *Hugh B. Cox.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

Plaintiff, a railroad brakeman, brought this action under the Federal Employers' Liability Act, 35 Stat. 65; 53 Stat. 1404; 45 U. S. C. § 51. He recovered a jury verdict of $24,990, but the Circuit Court of Appeals reversed because of errors in the charge by the District Judge and ordered a new trial. The plaintiff's claim as submitted to the jury was negligence on the part of an engineer in effecting a coupling operation at a speed which plaintiff thought would jolt him off the stirrup of the car he was riding. In jumping for safety, he claimed to have received a severe and permanent back injury. The defendant denied the occurrence, offered testimony that plaintiff did not work at the time in question and also evidence of his admission that he did not work on that day but instead shoveled snow to get his car out of the garage. It also was testified that he had told his conductor he hurt his back on a different occasion. But if the injury was sustained at the time and place alleged, the defendant denied negligence, claimed contributory negligence and pleaded a general release. The controversy here concerns the release.

It was proved and not denied that for a consideration of $250 the plaintiff executed a general release of "all claims and demands which I have or can or may have against the said Pennsylvania Railroad Company for or by reason of personal injuries sustained by me" at the

time and place involved in the suit. It also released claims for loss of time and expense, and recited that the payment was in compromise and not an admission of liability, that plaintiff read and understood the agreement and that the sum of money stated therein is all that he was to receive.

On the trial, the plaintiff testified that he read and understood the release, knew what he was doing and intended to waive any further claim, and that when he began talking settlement he said he should have between $300 and $350. No fraud was alleged, but the plaintiff testified that he executed the release in reliance on the claim agent's assurance that "there was nothing wrong" and that he "was all right to go back to the job."

At the trial, plaintiff offered evidence from which the jury might well find that he had a permanent and serious injury. The claim agent admitted that at the time of settlement he did not know the plaintiff was suffering the injury which the doctors at the trial described. The plaintiff had gone to a family physician who taped his back and to a chiropractor whose report plaintiff took with him to the claim agent. It did not diagnose permanent injury but did suggest a weakness making him more susceptible to recurrence. The Railroad procured no medical examination of plaintiff. The claim agent's testimony was that he determined the amount of the settlement on the basis of his belief that there was no liability.

Instructing the jury, the trial court stated:

"Anyhow, they settled to the extent of $250.00, and the release has been offered in evidence and admitted, and both sides agree that that release was not in contemplation of any sort of permanent injury.

.         .         .         .         .

"Now, I am going to consider that release as binding to the amount of $250.00, and if you find a verdict

628

for the plaintiff you will deduct that from any amount you would otherwise give him. The $250.00 he got for expenses and medical bills and services that he obtained up to that time; and if you find that he is entitled to a verdict at your hands I will ask you to deduct that $250.00 from any amount you otherwise would award him, because that is what he agreed to take toward that particular phase of his claim, and of course he would not and does not ask, as I understand it to be excused from that,—he admits that he got it, and there it is.

"The release, as I have told the attorneys for both sides, I do not consider binding insofar as it applies to his permanent injuries, because the Pennsylvania Railroad certainly didn't know he was permanently injured . . . ."

The Circuit Court of Appeals, quite rightly we think, construed the charge of the District Judge as withdrawing the question of validity of the release from the jury and said: "This was palpable error under the facts relating to the release and entirely aside from the Court's incorrect assumption that there was no dispute about the permanency of the injuries."

An examination of the record at the trial makes it clear that the issue was raised and sharply litigated as to whether the injury, if received by plaintiff in the manner alleged, was permanent in character. Only when and if this issue was resolved in favor of one party or the other could it be known whether there was a basis for finding a mutual mistake or any mistake of fact in executing the release. The court, however, resolved the issue of permanence of injury against the defendant, at least so far as the release was concerned, and on that basis withdrew consideration of that issue from the jury. Even if the issue of permanence were resolved against the defendant, an issue still existed as to validity of the release

since the defendant insists that it did not act from mistake as to the nature and extent of the injuries but entered into the release for the small consideration involved because, upon the evidence in its hands at the time, no liability was indicated. We think the defendant was entitled to argue these contentions to the jury and to have them submitted under proper instructions.

It is apparent that the jury accepted the instructions of the court on the subject of the release. Returning, they rendered a verdict "For the plaintiff, and assess the damages at $25,240, of which the railroad is to be reimbursed with $250.00." The court, saying he wanted to make the record right, asked the jury if they made a net finding of $24,990, which the foreman said they did. Under the instructions they had received, there was little else that the jury could do, for the court had withdrawn from them the issue as to the validity of the release and consequently had given them no instructions as to the law that should govern the determination of any such question.

While the trial court assumed a finding of permanency as a basis for his setting aside of the release, after challenge to his assumption as to the nature of the injuries he made every effort to correct the impression, insofar as it affected the issue of damages. But the trial court did not correct or in any way alter his determination that the release was not binding insofar as it rested on the assumption of permanent injury. The Court of Appeals was right in holding that failure to submit this latter question to the jury was reversible error.

We are urged, however, to decide in this case that the release was properly disregarded by the trial court upon the ground that the burden should not be on one who attacks a release, to show grounds of mutual mistake or fraud, but should rest upon the one who pleads such a contract, to prove the absence of those grounds. It

is not contended that this is or ever has been the law; rather, it is contended that it should be the law, at least as to railroad cases. The *amicus* brief* puts it that "We ask that the burden of establishing the validity of a release taken from a railroad employee under the Federal Employers' Liability Act be placed on the railroad, and that, where but a nominal sum has been paid, which is less than or even equal to only the wages lost, that fact of itself be held to be evidence of at least a mistake of fact, if not presumed fraud, since the railroad possesses superior facilities for determining the extent of the injuries. . . ." Considerable reliance is placed upon a concurring opinion in the Court of Appeals for the Second Circuit in *Ricketts* v. *Pennsylvania R. Co.,* 153 F. 2d 757, 760. However persuasive the arguments there stated may be that inequality of bargaining power might well justify a change in the law, they are also a frank recognition that the Congress has made no such change. An amendment of this character is for the Congress to consider rather than for the courts to introduce. If the Congress were to adopt a policy depriving settlements of litigation of their *prima facie* validity, it might also make compensation for injuries more certain and the amounts thereof less speculative. But until the Congress changes the statutory plan, the releases of railroad employees stand on the same basis as the releases of others. One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted.

The plaintiff has also contended that this release violates § 5 of the Federal Employers' Liability Act which provides that any contract to enable any common carrier to "exempt itself from any liability created by this chap-

---

*[In support of the petition for certiorari, see *post,* p. 807.]

ter, shall to that extent be void." 35 Stat. 66, 45 U. S. C. § 55. It is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility. Where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation.

Since we believe the Court of Appeals was right in directing a new trial at which the jury shall be permitted to pass on all issues of fact, the judgment is

*Affirmed.*

MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS, MR. JUSTICE MURPHY and MR. JUSTICE RUTLEDGE, being of the view that releases under the Federal Employers' Liability Act should be governed by the same rule which applies to releases by seamen in admiralty (see the separate opinion of Judge Jerome Frank, *Ricketts* v. *Pennsylvania R. Co.,* 153 F. 2d 757, 767–770), dissent from an affirmance of the judgment.