104 F.3d 89
 BABBITT, et al., Plaintiffs,
Fred Muzu Saleem (94-4147); Charles R. Lutz (95-3208);
James E. Poole (95-3210); Richard L. Hammond (95-3924);
Collie Poole, Jr. (95-3925); Burl E. Stevenson, Jr.
(95-3929); C.A. Burdge (95-3965), Plaintiffs-Appellants,
v.
NORFOLK & WESTERN RAILWAY COMPANY, Defendant-Appellee.
 Nos. 94-4147, 95-3208, 95-3210, 95-3924, 95-3925, 95-3929
and 95-3965.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 17, 1996.
Decided Jan. 2, 1997.
 
 Mark T. Coulter (argued and briefed), Robert N. Peirce, Jr. & Associates, Pittsburg, PA, and Steve C. Foley, Robert E. Sweeney & Associates, Cleveland, OH, for Plaintiffs-Appellants.
 Forrest A. Norman and Jay Clinton Rice (argued and briefed), Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Defendant-Appellee.
 Before: KEITH, NORRIS, and DAUGHTREY, Circuit Judges.
 KEITH, Circuit Judge.
 
 
 1
 Plaintiffs-Appellants, Babbitt et al., ("Plaintiffs") appeal the grant of summary judgment in favor of Defendant-Appellee Norfolk & Western Railway Company. For the reasons stated below, we REVERSE and REMAND to the district court for proceedings consistent with this opinion.
 
 I. Statement of the Case
 A. Statement of Facts
 
 2
 Plaintiffs are former employees of Defendant-Appellee, Norfolk & Western Railway Company ("Norfolk"). They are seeking damages, pursuant to the Federal Employers' Liability Act ("FELA"), for hearing loss on the grounds that Norfolk negligently exposed them to excessive noise levels during the course of their employment. At issue is the effect of a Resignation and Release Agreement (the "Release") that the Plaintiffs signed when they separated from the company. The district court granted summary judgment in favor of Norfolk because it found that the Release constituted a bar to the Plaintiffs' claims.
 
 
 3
 The Release was part and parcel of Norfolk's Voluntary Separation Program in which it offered early retirement to certain eligible employees. The advantage of the plan for the employees, in addition to an early retirement, included a lump sum payment, as well as continuation of health, and other benefits. Norfolk maintains that eligible employees applied and were selected to participate in the program. Norfolk contends that at all relevant times, the employees were fully informed regarding the extent of the benefits and possible disadvantages of the program.
 
 
 4
 The purpose of the program is disputed. The Plaintiffs argue that Norfolk's primary interest in promulgating the Voluntary Separation Program was to secure the financial advantages that inure to Norfolk from buying-out the employment rights of workers with union seniority status. They argue that Norfolk financially benefitted by being able to replace these older, more expensive workers with younger, less expensive ones. On the other hand, Norfolk's argument focuses not on the program, but on the Resignation and Release. They assert that the Release was an attempt to settle all claims as part of the cessation of a worker's employment relationship with the railroad. Norfolk insists that the purpose of the Release was so that it could "buy its peace" from its former employees.
 
 
 5
 Thus, Norfolk contends that the Plaintiffs' hearing loss claims, presently before this Court, should be barred by the Release which purports not to hold Norfolk liable for any claims. Alternatively, Norfolk argues that a substantial portion of the Plaintiffs were aware of their hearing loss claims before they signed the Release, implying that those claims were specifically contemplated by the Release.
 
 
 6
 The Plaintiffs argue, however, that because of the gradual and cumulative onset of their hearing loss, they were not aware of their injuries until after they had ceased working for Norfolk. Moreover, they claim that it was even later still that they were able to attribute the loss of their hearing to the excessively noisy conditions under which they labored at Norfolk.
 
 B. Procedural History
 
 7
 This appeal is the consolidation of a number of cases from the Northern District of Ohio in which summary judgment was granted in favor of Norfolk. Norfolk moved for summary judgment as to all those Plaintiffs who signed the Resignation and Release agreement as part of the Voluntary Separation Program offered by the railroad. Most of the cases now on appeal were referred to a magistrate who recommended that Norfolk's motions be granted. The district court, without actually deciding whether the Release could be used to bar the Plaintiffs' claims under FELA, granted Norfolk's motions on the grounds that the Release constituted a compromise procured without resort to fraud, duress, or undue influence. The Plaintiffs, however, maintain that enforcement of the Release would be in direct contravention of FELA, specifically 45 U.S.C. §§ 51 and 55. For the reasons that follow, we find that the district court erroneously granted summary judgment in favor of Norfolk.
 
 II. Discussion
 
 8
 A district court's decision to grant of summary judgment is subject to de novo review. Terry Barr Sales Agency, Inc., v. All-Lock Co., Inc., 96 F.3d 174, 178 (6th Cir.1996). The moving party bears the burden of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All facts and inferences must be interpreted in the light most favorable to the nonmoving party. Hartleip v. McNeilab, Inc., 83 F.3d 767, 774 (6th Cir.1996); Huizinga v. United States, 68 F.3d 139, 143 (6th Cir.1995).
 
 
 9
 The central issue that is presented by this case is whether 45 U.S.C. § 55 prohibits Norfolk from absolving itself of liability for FELA claims through the execution of a general release.[1] Norfolk's position is that it may "buy its peace" from the Plaintiffs by getting them to agree, as part of their resignation from the company, to execute a release of all claims, known and unknown, for which the company may ever be held liable.[2] The Plaintiffs argue that the Release is unenforceable because it contravenes 45 U.S.C. § 55.
 
 
 10
 45 U.S.C. § 51 of FELA provides that the purpose of the Act is to hold a negligent employer liable for injuries suffered by an employee.[3] In addition, 45 U.S.C. § 55, explicitly maintains that any contract attempting to exempt a carrier from liability created by FELA is void. Thus, 45 U.S.C. § 55, specifically states that:
 
 
 11
 Any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void.
 
 
 12
 Hence, it is clear that the purpose of FELA, as stated in 45 U.S.C. §§ 51 and 55, is to require negligent railroads to assume liability for injuries to employees in the course of their employment. See Dice v. Akron, Canton & Youngstown R. Co., 342 U.S. 359, 362, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952) (noting that the general policy of FELA is "to give railroad employees a right to recover just compensation for injuries negligently inflicted by their employers"); see also Taylor v. Wells Fargo & Co., 220 F. 796, 797 (5th Cir.1915) (noting that "[f]or such a carrier to be able ... to exempt itself from liability created by the statute ... would be in plain contravention of the explicit provision[s]" of FELA). Consequently, "railroads may not obtain releases from employees which enable the railroad to exempt itself from liability." Wilson v. CSX Transportation, 83 F.3d 742, 745 (6th Cir.1996).
 
 
 13
 However, 45 U.S.C. § 55 is not without its exceptions. As Norfolk correctly argues, the Supreme Court has held that a release of FELA claims can have the same effect as any other release, in that it may constitute a settlement or compromise, rather than an attempt to escape liability. See Callen v. Pennsylvania R.R. Co., 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242 (1948).
 
 
 14
 In Callen, a plaintiff brought suit against a railroad company for injuries sustained during the course of his employment. Prior to the suit, but subsequent to the injuries, the plaintiff executed a general release freeing the railroad from liability for the injuries sustained in the accident in exchange for two hundred and fifty dollars. Callen, 332 U.S. at 626, 68 S.Ct. at 296. The issue before the Supreme Court was not the validity of the release, but rather the accuracy of the trial judge's instructions to the jury. However, after dealing with the jury instruction issue, the Court, in the last paragraph of its opinion, dismissed an argument raised by the plaintiff that the release could not be enforced in the face of 45 U.S.C. § 55. The Court noted that the release was "not a device to exempt from liability but is a means of compromising a claimed liability" and "where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation." Callen, 332 U.S. at 631, 68 S.Ct. at 298-99. Thus, the Supreme Court has found that a release executed as part of a settlement of disputed liability for work-related injuries can survive application of 45 U.S.C. § 55.
 
 
 15
 A different scenario was presented in Philadelphia, Baltimore, & Washington Railroad Company v. Schubert, 224 U.S. 603, 32 S.Ct. 589, 56 L.Ed. 911 (1912). In Schubert, the Court dealt with an agreement which stipulated that the acceptance of benefits from a relief fund operated by the employer functioned as a release and satisfaction of all claims against the company. When an injured railroad employee, who had accepted benefits from the fund for his injuries, brought suit against the company under FELA, the company pled the release as a defense. Schubert, 224 U.S. at 606-07, 32 S.Ct. at 589-90. The Court noted that the company was trying to use its general release to defeat liability for the damages sustained by the employee, which otherwise the company would be bound to pay under the statute. Schubert, 224 U.S. at 612, 32 S.Ct. at 591-92. The Court held that the "conclusion cannot be escaped that such a[ ] [general] agreement is one for immunity in the described event, and as such it falls under the condemnation of the statute." Id.
 
 
 16
 Similarly, in Duncan v. Thompson, 315 U.S. 1, 7, 62 S.Ct. 422, 424, 86 L.Ed. 575 (1942), the Supreme Court held that a general release signed by an employee did not constitute a bar to recovery under FELA. In Duncan, an injured employee accepted six hundred dollars for living expenses in return for which he promised to settle his claim in good faith with the company. The Court held that the agreement did not constitute a compromise because the employee never actually settled his claim--with respect to his injuries--with the company. The money that was exchanged was earmarked for living expenses, not settlement purposes, and the promise that was procured was given in exchange for a promise not to sue. Duncan, 315 U.S. at 7-8, 62 S.Ct. at 424-25.
 
 
 17
 Hence, Schubert and Duncan are distinguishable from Callen by the fact that in Callen the employer and employee executed a contract that settled an actual controversy, i.e., liability for the plaintiff's specific injuries. In contrast, Schubert and Duncan did not involve express agreements to settle claims for specific injuries, but instead centered around a general release. Because the releases in Schubert and Duncan granted general immunity to the railroad, as opposed to addressing a specific instance of disputed liability, they were void.
 
 
 18
 In light of this case precedent, it is clear that FELA is not offended when there is a compromise of a claim of liability that settles a specific injury sustained by an employee. Schubert, 224 U.S. at 612, 32 S.Ct. at 591-92; Duncan, 315 U.S. at 7, 62 S Ct. at 424 (stating that a "bona fide compromise and settlement of claims arising under the act" passes muster); Boyd v. Grand Trunk Western R. Co., 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949) (noting that a "full compromise enabling the parties to settle their dispute without litigation" does not contravene FELA); South Buffalo Ry. Co. v. Ahern, 344 U.S. 367, 73 S.Ct. 340, 97 L.Ed. 395 (1953) (stating that "full and fair compromises of FELA claims do not clash with the policy of the Act").
 
 
 19
 Consequently, where there exists a dispute between an employer and employee with respect to a FELA claim, the parties may release their specific claims as part of an out-of-court settlement without contravening the Act. However, where the release was not executed as part of a specific settlement of FELA claims, 45 U.S.C. § 55 precludes the employer from claiming the release as a bar to liability. Schubert, 224 U.S. at 612, 32 S.Ct. at 591-92. To be valid, a release must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him.
 
 
 20
 In the case at bar, the district court did not analyze whether the Release was intended to resolve a claim of liability for the specific injuries in controversy. As a result, we must reverse the district court's grant of summary judgment in favor of Norfolk and remand to the district court to ascertain whether the Release was executed as part of a settlement for damages sustained for the Plaintiffs' specific injuries. In remanding this case, we note that the Release cannot serve as a bar to the Plaintiff's claims under FELA unless the Release was clearly executed as a settlement for their hearing loss injuries.
 
 III. Conclusion
 
 21
 Because the district court erred in granting summary disposition in favor of Norfolk, we REVERSE the grant of summary judgment, and REMAND to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 The Plaintiffs raise four issues on appeal: (a) whether the Release at issue is void as being in contradiction of 45 U.S.C. § 55; (b) whether the Release can apply to a non-accrued cause of action; (c) whether there was a mutual mistake regarding the Plaintiffs' loss of hearing claim, rendering the Release unenforceable as a matter of contract law; and (d) whether the parties intended the Release to apply to FELA claims. However, we decline to address the last three issues given that we find that there are genuine issues of material fact as to whether the release is inconsistent with 45 U.S.C. § 55
 
 
 [2]
 Norfolk states that the purpose of the Release is to:
 ... hereby release and forever discharge the Company and its agents, officers and employees from any claim (with the exception of vested pension rights), demand, action or cause of action, of any kind whatsoever, known or unknown, which I have or could have on account of, or in any manner arising out of or connected with, my employment by the said Company, ... including but not limited to any claim or right asserted under or arising out of any agreement, regulation, condition, or statute affording me employment protection ....
 
 
 [3]
 45 U.S.C. § 51 states that:
 Every common carrier by railroad while engaging in [interstate] commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... due to its negligence.