ANDERSON, Appellant,

v.

A.C. & S., INC. et al., Appellees.

[Cite as *Anderson v. A.C. & S., Inc.,* 154 Ohio App.3d 393, 2003-Ohio-4943.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 82304 and 82426.

Decided Sept. 18, 2003.

394

Kelley & Ferraro, Michael V. Kelley, John A. Sivinski and Anthony Gallucci, for appellant.

Gallagher, Sharp, Fulton & Norman, Thomas E. Dover, Kevin C. Alexandersen, Monica A. Sansalone and Holly M. Olarczuk–Smith, for appellees Norfolk and Western Railway Co., Norfolk Southern Railway Co. and Norfolk Southern Corp.

Burns, White & Hickton, LLC, David A. Damico and Daniel B. Donahoe, for appellee American Financial Group, Inc.

TIMOTHY E. MCMONAGLE, Judge.

{¶ 1} Plaintiff-appellant, Shirley Anderson, individually and as executor of the estate of Lester Anderson, her deceased husband, appeals from various orders of the trial court, which, in essence, granted in part the motion for summary judgment of defendants-appellees, Norfolk & Western Railway Company, Norfolk

Southern Railway Company, Norfolk Southern Corporation, and American Financial Group. Defendants-appellees cross-appeal.

## I. PROCEDURAL HISTORY

{¶ 2} In March 2000, appellant brought suit against multiple parties, asserting claims pursuant to the Federal Employers' Liability Act ("FELA"), Section 51 et seq., Title 45, U.S.Code, as a result of Lester Anderson's death in 1998 from mesothelioma, allegedly caused from exposure to asbestos and asbestos-containing products while he was employed by appellees and their predecessor railroads. Appellant asserted a survivorship claim for personal injuries suffered by Lester Anderson during his lifetime and a wrongful-death claim.

{¶ 3} Appellees subsequently filed a motion for summary judgment, in which they argued that appellant's claims were barred by a "Covenant Not to Sue and to Cease Suing" signed by both appellant and Lester Anderson in 1986 as settlement of an earlier lawsuit against appellees.

{¶ 4} The trial court initially denied appellees' motion. After appellees filed a motion for clarification of the trial court's order, the trial court issued an order granting the motion and stating, "The claim remaining is Shirley Anderson's claim for wrongful death under F.E.L.A."

{¶ 5} Appellant then filed a motion for further clarification of the trial court's order, seeking to clarify the viability of appellant's survivorship claim. The trial court denied appellant's motion.

{¶ 6} Appellant then filed a motion to allow evidence of Lester Anderson's survival claim and damages to be presented at trial. Subsequently, the trial court issued an order that stated:

{¶ 7} "The Court after oral arguments and briefs found that the plaintiff's survival claims were extinguished by a release executed by Lester Anderson on March 26, 1986. The Court finds that the release was signed after consulting with counsel and the plaintiff's awareness of the potential risks of contracting other lung diseases and cancer. Plaintiff's motion to allow evidence of Lester Anderson's survival claim and damages is denied. Judgment for Defendants. Final. There is no just reason for delay."

{¶ 8} Appellant appealed from this order; appellees cross-appealed. Subsequently, the trial court journalized its orders denying appellees' motion for summary judgment, granting appellees' motion for clarification, and denying appellant's motion for further clarification. Appellant filed a second notice of appeal from these orders; appellees likewise filed a second notice of cross-appeal. Pursuant to motion, the appeals were consolidated.

## II.   THE FIRST LAWSUIT AND COVENANT NOT TO SUE

{¶ 9} The record reflects that from 1940 until 1961, Lester Anderson was employed as a sheet metal worker and pipe fitter by the Nickel Plate Railway Company, except during service in the United States Navy from 1944 through 1946.  Thereafter, from 1961 through 1964, Anderson was employed by the New York Central Railroad Company as a sheet metal and maintenance worker. Anderson was exposed to asbestos and asbestos-containing products at various times during his employment with the railroads.  In 1983, via a union screening, Anderson was diagnosed with asbestosis.

{¶ 10} In November 1984, Lester and Shirley Anderson filed suit against appellees and others, seeking compensation under FELA for damages incurred as a result of Lester's asbestosis.

{¶ 11} In consideration of settlement funds of $50,000, on March 26, 1986, the Andersons executed a Covenant Not to Sue and to Cease Suing appellees.  The covenant stated:

{¶ 12} "FOR THE SOLE AND ONLY CONSIDERATION of the sum of FIFTY THOUSAND DOLLARS ($50,000) the receipt and sufficiency of which is hereby acknowledged the undersigned LESTER ANDERSON does for himself, his successors and assigns, hereby agree to cease suing and not to sue or present any claims, demands, rights, and causes of action of whatever kind, nature or description including but not limited to such as may exist at common law, by statute or by virtue of the Federal Employers Liability Act or the Boiler Inspection Act against the Norfolk and Western Railway Company, its parent, the Norfolk Southern Corporation and, to the same extent as if expressly named herein, their respective subsidiaries and affiliated companies * * * (hereinafter collectively referred to as the NW) and, Pennsylvania Railroad, New York Central Railroad, Penn Central Corporation, Consolidated Rail Corporation and National Railroad Passenger Corporation, and any and all other related persons, firms, companies, partnerships and corporations * * * (hereinafter collectively referred to as CONRAIL) which the undersigned may now or hereafter have or assert against NW or CONRAIL arising out of or by reason of or in any manner connected with or related to LESTER ANDERSON's employment or association with the NW or CONRAIL and the injuries, losses and damages, whether physical, mental or financial resulting therefrom, said injuries, losses and damages being in part set forth and described in the pleadings and documents filed in the * * * PENDING CASE.

{¶ 13} "WITHOUT IN ANY MANNER LIMITING THE FOREGOING, the consideration paid hereunder for and on behalf of the NW or CONRAIL does hereby satisfy that portion of the total amount of losses and damages suffered or

incurred by LESTER ANDERSON and SHIRLEY JOYCE ANDERSON, individually and as husband and wife, their successors and assigns which have been caused by any conduct on the part of the NW or CONRAIL, regardless of the description of such conduct, as may be hereafter determined in the further trial or other disposition of the PENDING CASE or in any other action brought or commenced by LESTER ANDERSON and SHIRLEY JOYCE ANDERSON individually and as husband and wife and the said LESTER ANDERSON and SHIRLEY JOYCE ANDERSON individually and as husband and wife do hereby release and forever discharge that fraction, portion or percentage of the total claim, demand, right or cause of action for injuries, losses or damages whether physical, mental or financial against all parties which may hereafter by further trial or other disposition of the PENDING CASE or any other action be determined to be caused by the NW or CONRAIL.

{¶ 14} "WITHOUT IN ANY MANNER LIMITING THE FOREGOING, this agreement is not and is not to be deemed to be evidence of or an admission of liability on the part of the NW or CONRAIL, but constitutes a compromise in settlement of a disputed claim.

{¶ 15} "FURTHER, WITHOUT IN ANY MANNER LIMITING THE FOREGOING, this covenant is expressly intended to and does include any and all claims which the said SHIRLEY JOYCE ANDERSON may now or hereafter have or assert for loss of services, companionship, consortium, medical, hospital, nursing and pharmaceutical expense arising out of, relating to or resulting from the aforesaid association or employment of LESTER ANDERSON at the NW or CONRAIL.

{¶ 16} "IT IS FURTHER AGREED AND UNDERSTOOD without any limitation on the foregoing that this agreement includes on behalf of LESTER ANDERSON[,] his successors and assigns[,] any claim, demand, right or cause of action for injuries, losses and damages resulting from or relating in any manner to exposure to or ingestion of any substance whatsoever[,] including but not limited to asbestos dust or fiber and any diseases resulting therefrom as well as asbestosis or asbestos-related disease, illness or injury including any and all forms of cancer or mesothelioma, claimed to be related to asbestos or any other substance whether or not presently alleged or manifested."

## III.  STANDARD OF REVIEW

{¶ 17} In her single assignment of error, appellant contends that the trial court erred in denying her motion to allow evidence of Lester Anderson's survival claim and damages to be presented at trial.  Although appellant's assignment of error is couched in terms of a refusal by the trial court to allow evidence of the survivorship claim at trial, in reality appellant is appealing from the judgment of

the trial court granting appellees' motion for summary judgment on the survivorship claim.

{¶ 18} In their cross-appeal, appellees assert that the trial court erred in denying their motion for summary judgment in part, i.e., the trial court erred in ruling that Shirley Anderson's wrongful-death claim was not barred by the release executed by Lester and Shirley Anderson in the prior action.

{¶ 19} FELA cases may be brought, at plaintiff's option, in federal court or in state court. Section 56, Title 45, U.S.Code. "FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." *Vance v. Consol. Rail Corp.* (1995), 73 Ohio St.3d 222, 227, 652 N.E.2d 776.

{¶ 20} This court reviews the trial court's judgment regarding a motion for summary judgment de novo and uses the same standard that the trial court applies under Civ.R. 56(C). See *Renner v. Derin Acquisition Corp.* (1996), 111 Ohio App.3d 326, 333, 676 N.E.2d 151; *N. Coast Cable Ltd. Partnership v. Hanneman* (1994), 98 Ohio App.3d 434, 440, 648 N.E.2d 875. Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

## IV. LAW AND ANALYSIS

{¶ 21} The Federal Employers' Liability Act ("FELA"), Section 51 et seq., Title 45, U.S.Code, makes common-carrier railroads liable in damages to employees who suffer work-related injuries caused by the railroad's negligence. Section 51 of the Act provides:

{¶ 22} "Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * *."

{¶ 23} "At the time of FELA's enactment, many railroads 'insisted on a contract with their employees, discharging the company from liability for personal injuries.'" *Damron v. Norfolk & W. Ry. Co.* (N.D.Ohio 1995), 925 F.Supp. 520, 523, quoting H.R. Rep. 1386, 60th Cong., 1st Sess. 6 (1908). The effect of such contracts was to completely deprive injured employees of their rights to actions at law. Id., citing S.Rep. No. 400, 60th Cong., 1st Sess. 3 (1908). Consequently,

Congress enacted Section 55 to limit a railroad company's ability to escape liability by using such contracts. Section 55 of the Act provides:

{¶ 24} "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void * * *."

{¶ 25} The central issue presented by this case is whether Section 55 prohibits appellees from absolving themselves of liability for appellant's FELA claims by virtue of appellant's execution of the 1986 Covenant Not to Sue and to Cease Suing. Appellees' position is that it "bought its peace" from appellant when, in consideration of $50,000, Lester and Shirley Anderson signed the agreement to settle their pending case and release all future claims against appellees. Accordingly, appellees assert, both appellant's survival claim and her wrongful-death claim are barred by the release. Appellant, on the other hand, contends that the release is void because it contravenes Section 55 and, therefore, neither her survival claim nor her wrongful-death claim is barred.

{¶ 26} The validity of a release in a FELA action is governed by federal rather than state law. *Maynard v. Durham S. Ry. Co.* (1961), 365 U.S. 160, 161, 81 S.Ct. 561, 5 L.Ed.2d 486. The party attacking the release bears the burden of showing the release to be invalid. *Callen v. Pennsylvania RR. Co.* (1948), 332 U.S. 625, 629–630, 68 S.Ct. 296, 92 L.Ed. 242.

{¶ 27} As appellees correctly argue, the United States Supreme Court has held that "a release of FELA claims can have the same effect as any other release, in that it may constitute a settlement or compromise, rather than an attempt to escape liability." *Babbitt v. Norfolk & W. Ry. Co.* (C.A.6, 1997), 104 F.3d 89, 92, citing *Callen v. Pennsylvania RR. Co.* (1948), 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242.

{¶ 28} "In *Callen,* a plaintiff brought suit against a railroad company for injuries sustained during the course of his employment. Prior to the suit, but subsequent to the injuries, the plaintiff executed a general release freeing the railroad from liability *for the injuries sustained in the accident* in exchange for two hundred and fifty dollars. *Callen,* 332 U.S. at 626 [68 S.Ct. 296, 92 L.Ed. 242]. The issue before the Supreme Court was not the validity of the release, but rather the accuracy of the trial judge's instructions to the jury. However, after dealing with the jury instruction issue, the Court, in the last paragraph of its opinion, dismissed an argument raised by the plaintiff that the release could not be enforced in the face of 45 U.S.C. § 55. The Court noted that the release was 'not a device to exempt from liability but a means of compromising a claimed liability' and 'where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims

without litigation.' *Callen,* 332 U.S. at 631 [68 S.Ct. 296, 92 L.Ed. 242]. Thus, the Supreme Court has found that a release executed as part of a settlement of disputed liability for work-related injuries can survive application of 45 U.S.C. § 55." (Emphasis sic.) *Babbitt,* 104 F.3d at 92. See, also, *Boyd v. Grand Trunk W. RR.* (1949), 338 U.S. 263, 266, 70 S.Ct. 26, 94 L.Ed. 55 ("[A] full compromise enabling the parties to settle their dispute without litigation * * * [does] not contravene the [Federal Employers' Liability] Act.").

{¶ 29} Thus, we must determine whether the release document at issue represents a permissible compromise and settlement or whether it is the type of "device" intended to exempt from FELA liability that is prohibited by Section 55 of FELA.

{¶ 30} The "purpose or intent" of such devices "is to be found in their necessary operation and effect in defeating the liability which the statute was designed to enforce." *Apitsch v. Patapsco & Back Rivers RR. Co.* (D.Md.1974), 385 F.Supp. 495, 504, citing *Philadelphia B. & W. RR. v. Schubert* (1912), 224 U.S. 603, 32 S.Ct. 589, 56 L.Ed. 911.

{¶ 31} Here, the first paragraph of the release stated:

{¶ 32} "* * *Lester Anderson does for himself, his successors and assigns, hereby agree to cease suing and *not to sue or present any claims, demands, rights, and cause of action of whatever kind, nature or description* including but not limited to such as may exist at common law, by statute or by virtue of the Federal Employers Liability Act or the Boiler Inspection Act against the Norfolk and Western Railway Company * * *." (Emphasis added.)

{¶ 33} Thus, it is apparent from the plain language of the release that the intent of the release was to exempt appellees from all potential liability related to Lester Anderson's employment. Indeed, appellee American Financial Group admits that "the original intent of the release was indeed to release any and all future claims." Brief on Appeal at 15.

{¶ 34} Appellees contend, however, that although the language is broad, the agreement was not a blanket waiver of liability but merely an attempt by appellees to "buy their peace" from appellant regarding his alleged occupational exposure to asbestos or asbestos-containing products while employed by the railroad.

{¶ 35} With respect to claims related to appellant's exposure to asbestos, the agreement stated:

{¶ 36} "It is further agreed and understood * * * that this agreement includes * * * any claim, demand, right or cause of action for injuries, losses and damages resulting from or relating in any manner to exposure to or ingestion of any substance whatsoever including but not limited to asbestos dust or fiber and any

diseases resulting therefrom as well as asbestosis or asbestos-related disease, illness or injury including any and all forms of cancer or mesothelioma, claimed to be related to asbestos or any other substance whether or not presently alleged or manifested."

{¶ 37} In *Babbitt v. Norfolk & W. Ry. Co.* (C.A.6, 1997), 104 F.3d 89, the Court of Appeals for the Sixth Circuit considered whether a resignation and general release agreement signed by the plaintiffs when they separated their employment from the railroad company barred their subsequent FELA claims for hearing loss caused by excessively noisy work conditions. The Sixth Circuit noted that "it is clear that FELA is not offended when there is a compromise of a claim of liability that settles a specific injury sustained by an employee." *Babbitt*, 104 F.3d at 93. Continuing, the court stated:

{¶ 38} "[W]here there exists a dispute between an employer and employee with respect to a FELA claim, the parties may release their specific claims as part of an out-of-court settlement without contravening the Act. However, where the release was not executed as part of a specific settlement of FELA claims, 45 U.S.C. § 55 precludes the employer from claiming the release as a bar to liability. *To be valid, a release must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him.*" (Emphasis added; citations omitted.) Id.

{¶ 39} Accordingly, the Sixth Circuit reversed the grant of summary judgment in favor of the railroad and remanded the case for a determination regarding whether the release "was intended to resolve a claim of liability *for the specific injuries in controversy.*" (Emphasis sic.) Id.

{¶ 40} Likewise, in *Fannin v. Norfolk & W. Ry. Co.* (1995), 106 Ohio App.3d 401, 666 N.E.2d 291, the Ninth Appellate District Court considered whether a general release signed as part of the employer's "settlement/buy-out proposal" for its employees was a valid waiver of potential FELA claims sufficient to bar the employees' subsequent claims for work-related injuries and asbestos exposure. The court noted that in *Callen,* the United States Supreme Court stated that parties may settle their FELA claims without litigation "where controversies exist as to whether there is liability." Id. at 407, 666 N.E.2d 291. The court then reasoned:

{¶ 41} "While such language seems to indicate that parties may indeed settle FELA claims via a release, it is clear that this only applies to claims which have already arisen *at the time the release is signed;* the release is valid only 'where controversies exist,' i.e., where it disposes of an accrued FELA claim. Thus, while one can contract to settle or waive actual FELA *claims,* one may *not*

similarly contract to waive all FELA *rights* with respect to claims which have not yet arisen." Id. (Emphasis sic.)

{¶ 42} Asbestosis and mesothelioma, although both caused by exposure to asbestos fibers, are separate and distinct diseases that give rise to separate and distinct causes of action under FELA. *Wilson v. Johns–Manville Sales Corp.* (C.A.D.C.1982), 684 F.2d 111, 114; *Hagerty v. L & L Marine Serv., Inc.* (C.A.5, 1986), 788 F.2d 315, 320. Under FELA, claims accrue when the claimant knew, or in the exercise of reasonable diligence should have known, of both the latent injury and its work-related cause. *Voytko v. Consol. Rail Corp.* (C.A.6, 1996), 94 F.3d 645, 646.

{¶ 43} The record in this case reflects that Lester Anderson was not diagnosed with mesothelioma until January 9, 1998, some 12 years after he signed the release at issue. Thus, Anderson's claim for mesothelioma had not yet accrued in 1986 when he signed the release and, accordingly, in light of *Babbitt* and *Fannin,* the release cannot bar this unaccrued claim for an unknown injury. Appellees argue, however, that *Babbitt* and *Fannin* are not relevant to the release signed by Anderson because they involved releases signed in connection with a buy-out from the company, rather than the settlement of litigation. We are not persuaded. Although factually the cases may differ, the principle announced in each is the same: under FELA, a release is valid only where it disposes of an accrued claim for a known injury.

{¶ 44} Accordingly, we find appellees' reliance on *Wicker v. Consol. Rail Corp.* (C.A.3, 1998), 142 F.3d 690, misplaced. In *Wicker,* the Third Circuit Court of Appeals held that a release does not violate Section 55 provided that it is executed for valid consideration as part of a settlement, "and [that] the scope of the release is limited to those risks which are known to the parties at the time the release is signed." Id. at 701. Appellees argue that the release in the instant case is valid, therefore, because at the time the release was executed, Anderson was aware of the *risk* of developing mesothelioma or other lung cancer as a result of his occupational exposure to asbestos.

{¶ 45} This is not the rule in the Sixth Circuit, however. Although a majority of courts have not so found, "the Sixth Circuit has adopted a bright-line rule that a release may be valid only with regard to injuries that are known at the time the release is executed." *Loyal v. Norfolk S. Corp.* (1998), 234 Ga.App. 698, 701, 507 S.E.2d 499. Thus, although Anderson may have been aware of the risk of developing mesothelioma as a result of his exposure to asbestos, because he did not have mesothelioma when he signed the release, his claim had not yet accrued and, therefore, he could not release it.

{¶ 46} Appellees also argue that the release is not a blanket waiver of liability but merely settlement of Anderson's claims for injuries resulting from asbestos exposure, because of the specificity of the language found in the third paragraph on page 2 of the release, in which Anderson specifically released his claims for "asbestosis or asbestos-related disease, illness or injury[,] including any and all forms of cancer or mesothelioma * * *."

{¶ 47} Contrary to appellees' assertion, however, the same paragraph also purports to release appellees from liability for "any claim, demands, rights, and causes of action of whatever kind, nature or description," including "injuries, losses and damages resulting from or relating in any manner to exposure to or ingestion *of any substance whatsoever* * * * whether or not presently alleged or manifested." (Emphasis added.) This broad language is clearly not a bargained-for settlement of only Anderson's asbestosis claim and injuries related to that claim. Reading this language in conjunction with the very broad language of the first paragraph of the release, it is apparent that the release goes well beyond merely compromising a claimed liability and impermissibly purports to exempt appellees from all "potential future claims the employee might have arising from injuries known or unknown by him." *Babbitt,* 104 F.3d at 93.

{¶ 48} Appellees also contend that we should find the release valid because Lester and Sheila Anderson were represented by counsel when they signed the release. Representation by counsel, however, cannot make an otherwise invalid release valid.

{¶ 49} Finally, we reject appellees' argument that appellant's claim is barred because she already recovered for the alleged wrongful act of the railroad companies, i.e., occupational exposure to asbestos, and is therefore not entitled to bring another claim based on the same tortious conduct.

{¶ 50} As noted recently by the United States Supreme Court, the separate-disease rule "allows a person who has recovered for injuries resulting from asbestosis to bring a new lawsuit—notwithstanding the traditional common-law proscription against splitting a cause of action—if cancer develops." *Norfolk & W. Ry. Co. v. Ayers* (2003), —— U.S. ——, 123 S.Ct. 1210, 155 L.Ed.2d 261 (Kennedy, J., dissenting). The separate-disease rule "evolved as a response to the special problem posed by latent-disease cases. Under the single-action rule, a plaintiff who recovered for asbestosis would then be precluded from bringing suit for later-developed mesothelioma. Allowing separate complaints for each disease, courts determined, properly balanced a defendant's interest in repose and a plaintiff's interest in recovering adequate compensation for negligently inflicted injuries. * * * The rule simply allows recovery for successive diseases and would necessarily exclude only double recovery for the same element of damages." Id. at 1221, 155 L.Ed.2d 261, fn. 12. See, also, Henderson & Twerski,

Asbestos Litigation Gone Mad: Exposure–Based Recovery for Increased Risk, Mental Distress, and Medical Monitoring (2002), 53 S.C.L.Rev. 815, 821, fn. 22. Accordingly, appellant's settlement of the asbestosis claim does not bar her subsequent recovery for a mesothelioma claim.

{¶ 51} Appellant's assignment of error is well taken. The trial court erred in granting appellees' motion for summary judgment regarding appellant's survival claim because the release is not valid to exempt appellees from liability. Accordingly, we affirm that portion of the trial court's order denying appellees summary judgment regarding appellant's wrongful-death claim and reverse that portion of the trial court's order granting appellees summary judgment regarding appellant's survival claim.

{¶ 52} Appellees' cross-appeal is overruled.

Judgment affirmed in part,<br>
reversed in part<br>
and cause remanded.

PATRICIA A. BLACKMON, P.J., and ANNE L. KILBANE, J., concur.