DAVID M. GLOVER, Judge
Irene Murphy filed a complaint in the Circuit Court of Jefferson County, alleging that Union Pacific Railroad Company (Union Pacific) negligently failed to protect her husband, Alton Murphy, from exposure to toxic chemicals during his employment with the railroad. The complaint alleged that the railroad's negligence caused Mr. Murphy to develop multiple myeloma, a rare form of blood cancer, leading to his death in 2014. Union Pacific filed a motion for summary judgment, arguing that Mr. and Mrs. Murphy previously released the railroad from any further liability for toxic exposure as part of a negotiated settlement of another claim for a lung injury in 2007. The circuit court agreed and granted Union Pacific's motion.
Irene now appeals the judgment, arguing that it should be reversed because the prior release is void under section 5 of the Federal Employers' Liability Act (FELA), which prohibits contracts that enable railroads "to exempt [themselves] from any liability[.]" 45 U.S.C § 55. According to Irene, the release is void under FELA because it goes beyond the injury and risk of future injury that were known to her and Mr. Murphy at the time they negotiated the release.
I. Facts and Procedural History
Alton Murphy worked for Union Pacific for thirty years. He worked as a manual laborer, then as a machine operator, before his retirement in 2002. In 2006, Mr. Murphy pursued a claim against the railroad, presumably alleging that his exposure to toxic substances during his employment caused him to suffer from pneumoconiosis, a lung disease that caused him shortness of breath. The claim apparently never went to suit. Mr. Murphy and Irene settled the claim with Union Pacific in 2007. In exchange for $ 20,000 the Murphys both signed a release that, in pertinent part, provided as follows:
DEFINITIONS
3. "Occupational Exposures," as used herein, shall mean and include any and all exposures to which ALTON MURPHY was exposed as an employee of Union Pacific. Occupational Exposures includes any and all exposures by any method, including exposures by breathing, touching, ingesting, or otherwise. Occupational Exposures includes any and all exposures to toxic materials, metals, or chemicals, including without limitation asbestos, dusts, fumes, vapors, smells, gases, fuels, combustion products and by-products, exhausts, solvents, cleaners, benzene, vinyl chloride, toluene, pesticides, herbicides, weed defoliants, lubricants, paints, paint thinners, silica and/or any other cancer causing agents, whether alleged or not alleged, caused by or contributed by or in any *678 way the legal responsibility of [Union Pacific].
RECITALS
1. ALTON MURPHY filed a claim against Union Pacific seeking compensation as a result of ALTON MURPHY 's alleged diseases ... from Occupational Exposures while he was employed by Union Pacific.
2. Union Pacific, without in any way admitting liability with reference to the claim asserted by MURPHY , desire[s] to reach full and final compromise of all claims arising from ALTON MURPHY 's alleged injury from Occupational Exposures, including any cancers, lung-related diseases and/or death, while ALTON MURPHY was employed by Union Pacific.
3. MURPHY desires to reach full and final compromise of all claims asserted against Union Pacific in the above-referenced cause.
AGREEMENT
1. Union Pacific is paying MURPHY the sum of [$ 20,000]. MURPHY agrees to accept said sum as full and complete compromise of any and all claims which have accrued or which may hereafter accrue in favor of MURPHY and against Union Pacific as a result of ALTON MURPHY 's alleged injury, including any cancers, lung-related diseases, and/or death, from Occupational Exposures while ALTON MURPHY was employed by Union Pacific. MURPHY hereby acknowledges receipt of payment by execution of this Settlement Agreement and Release, and agrees that such consideration is being paid and will be accepted in full, final, and complete compromise and settlement of all claims, demands, actions, injuries, damages, costs, and compensation of any kind or nature whatsoever arising out of the subject matter of this Settlement Agreement and Release, being any Occupational Exposure, whether known or unknown, whether or not ascertainable at the time this Settlement Agreement and Release is executed.
2. MURPHY hereby expressly agrees to cause the dismissal with prejudice of the above-described suit against Union Pacific, and to hold forever harmless Union Pacific against any and all claims, demands, actions, damages, costs, and compensation of any kind brought at any time by any person or party against Union Pacific for the purpose of enforcing any claims resulting from ALTON MURPHY'S alleged Occupational Exposures while ALTON MURPHY was employed by Union Pacific or damages and expenses arising as the result of said exposure, including but not limited to any claims asserted by persons claiming to be heirs of ALTON MURPHY .
3. MURPHY hereby releases any and all claims, demands, actions, damages, costs, and compensation of any kind or nature whatsoever against Union Pacific, accruing to MURPHY as a result of ALTON MURPHY 's alleged injury from his Occupational Exposures or the consequences flowing therefrom, including any cancers, lung-related diseases, and/or death. MURPHY further agrees and covenants not to institute any action at law or in equity against Union Pacific for any claim, demands, actions, damages, costs, and compensation of any kind as a result of ALTON MURPHY 's Occupational Exposures while ALTON MURPHY was employed by Union Pacific, or the consequences flowing therefrom, including but not limited to any claim for medical bills, or health care, lost earning power, loss of consortium, mental anguish, pain, and suffering, wrongful death, contribution and/or indemnity, wrongful death, and any other claims now or later existing. Union Pacific may plead this agreement as a complete defense to any action or *679 proceeding brought by MURPHY on the basis of the claims described above, and in breach of this covenant.
Mr. Murphy was diagnosed with multiple myeloma six years after signing the release, and he died on July 9, 2014. Irene Murphy, as her husband's personal representative, filed a complaint in the circuit court on February 24, 2016, alleging that Union Pacific negligently failed to protect Mr. Murphy from exposure to various toxic substances during his employment, proximately causing his multiple myeloma and premature death.
Union Pacific responded with a motion for summary judgment based on the prior release that the Murphys executed in 2007. Union Pacific argued that while section 5 of FELA prohibits contracts that "enable any common carrier to exempt itself from any liability," the Supreme Court and other federal courts have upheld releases entered into as a part of settlement agreements-including those that settle liability for future injuries. Relying on a case from the United States Court of Appeals for the Third Circuit, Wicker v. Consolidated Rail Corp. , 142 F.3d 690 (3d Cir. 1998), Union Pacific argued that such releases are valid when they are "limited to those risks which are known by the parties at the time the release is negotiated" or, in other words, when their language
spells out the quantity, location, and duration of the potential risks to which the employee has been exposed-for example toxic exposure-allowing the employee to make a reasoned decision whether to release the employer for future injuries or specifically known risks.
Id. at 701-02. According to Union Pacific, the language of the 2007 release met that standard because, inter alia , it only "cover[ed] known injuries and known risks of injury [,]" related to toxic exposure, including cancer.
Irene argued that summary judgment was not appropriate because, according to Wicker , the language of the release is not conclusive evidence of the risks known to the parties at the time they negotiated the release. She claims that is particularly true where, as here, the language of the release is boilerplate; containing a "laundry list" of toxic substances to which Mr. Murphy may-or may not-have knowingly been exposed. She further noted that the release fails to specifically list "multiple myeloma" among the risks of toxic exposure.
Irene also argued that the release did not demonstrate a negotiation of known risks, as it must under Wicker , because it went well beyond the risks associated with the toxic exposure and lung injury that Mr. Murphy claimed in 2006. Irene offered two affidavits in support of that argument. One of the affidavits was executed by J. Kirkland Sammons, the lawyer who represented Mr. Murphy in the earlier claim against Union Pacific. In relevant part, Mr. Sammons stated that he represented Mr. Murphy "in a claim against Union Pacific Railroad Company for asbestosis, a non-malignant disease resulting from occupational exposure to asbestos," and "[a]t the time he signed the release [in] 2007, the only claim or injury that Mr. Murphy had asserted against Union Pacific was his claim for asbestosis." Irene also submitted her own affidavit in which she stated that "[a]t no time did our attorney ... or anyone from the railroad tell us that my husband ran the risk of developing multiple myeloma due to his exposure to diesel exhaust and other toxic chemicals on the railroad due to his many years of exposure." Irene's affidavit also alleged that "if [she] or [her] husband knew that he would develop multiple myeloma almost six years after the signing of this Release, he never would have settled the claim for the sum of $ 20,000.00."
*680 Union Pacific subsequently filed motions to strike both affidavits that Irene submitted in opposition to its motion for summary judgment. The railroad argued that neither affidavit complied with Arkansas Rules of Civil Procedure 56(e) because each contained conclusions of law and alleged facts based on hearsay. Union Pacific also argued that documents that Mr. Sammons prepared in 2006-particularly a claim questionnaire acknowledging Mr. Murphy's exposure to other toxic substances-demonstrate that Mr. Murphy's earlier claim was not limited to asbestosis, as he alleged in his affidavit.
The circuit court granted Union Pacific's motion for summary judgment on June 28, 2017. Applying our rules of statutory construction to section 5 of FELA, the circuit court found that the 2007 release was valid because it did "not exempt [Union Pacific] from any and all liabilities," but was "limited to injuries caused by Occupational Exposures." The circuit court also found that portions of Irene's affidavit, "if she attempted to present [it] as testimony at trial, would be held inadmissible." Consequently, the court did not consider "the portions of the affidavit that related to Irene Murphy's opinion of Alton Murphy's knowledge, motive, intentions, or understanding of the Release/Agreement." The circuit court also did not consider "the entire content" of Mr. Sammons's affidavit because it was based on opinion; contained statements barred by the attorney-client privilege; failed to comply with Rule 56(e) ; and was "not trustworthy."
Irene now appeals the circuit court's order, raising two arguments on appeal. First, she argues that the circuit erred by granting Union Pacific's motion for summary judgment based on the prior release. According to Irene, the release fails to meet two distinct standards for determining when a release is valid under section 5. The release, she asserts, does not meet the "known risk" test that the Third Circuit developed in Wicker because it contains a "laundry list" of hazards without respect to whether Mr. Murphy was aware that he was exposed to them. She also claims the release fails to include "multiple myeloma" among the risks of toxic exposure. And she argues that the release fails to meet the "known injury" standard that the Sixth Circuit developed in Babbitt v. Norfolk & Western Railway Co. , 104 F.3d 89 (6th Cir. 1997), which, unlike Wicker 's "known risk" standard, limits valid releases to those that release liability for injuries that have actually accrued when the release is executed. Irene asserts the 2007 release, which releases Union Pacific from liability for "cancer ... and/or death," was not limited to the lung injury that Mr. Murphy claimed in 2006; therefore, she says the release is also invalid under Babbitt 's "known injury" test.
As between Babbitt and Wicker , Union Pacific confines its response to Wicker , arguing that the toxic substances listed in the release are among the substances that Mr. Murphy listed on the questionnaire he filled out in 2006, demonstrating that those alleged exposures were within the scope of his prior claim. Union Pacific further argues that "cancer" and "death" were mentioned eleven times in the release; therefore, multiple myeloma, a form of cancer, was a "known risk" when Mr. and Mrs. Murphy executed the release. Union Pacific also points to written advertisements, which Mr. Murphy's prior FELA counsel had disseminated in the past, that solicited former railroad employees. In those solicitations, multiple myeloma is referred to as a potential injury related to alleged toxic exposures.
Finally, Irene argues that the circuit court erred by refusing to consider any part of Mr. Sammons's affidavit.
*681 II. Standards of Review
A circuit court may grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. Blevins v. Hudson , 2016 Ark. 150, at 3, 489 S.W.3d 165, 167. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. Id. On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. Richardson v. Union Pac. R.R. Co. , 2011 Ark. App. 562, at 2, 386 S.W.3d 77, 79. In doing so, this court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Id. The burden is not on the moving party to demonstrate that every fact is undisputed but to show that reasonable minds could not differ as to the conclusion to be drawn from them. Blevins , 2016 Ark. 150, at 4, 489 S.W.3d 165, at 167.
Additionally, "FELA provides for concurrent jurisdiction of the state and federal courts." Richardson , 2011 Ark. App. 562, at 3, 386 S.W.3d at 79. "Although state courts use state procedural rules," substantive issues, such as the validity of the release in this case, "are governed by FELA." Id. , at 3, 386 S.W.3d at 79-80. The employee carries the burden of demonstrating that a prior release is invalid under section 5 of FELA. See Callen v. Pa. R.R. Co. , 332 U.S. 625, 630, 68 S.Ct. 296, 92 L.Ed. 242 (1948).
III. Discussion
In 1908, Congress enacted FELA "to ensure that [railroad] employees' suits would not be defeated by the same devices which Congress perceived to have been used in the immediate past by the railroads to avoid liability." Wicker , 142 F.3d at 696 (internal quotation marks omitted). Congress particularly noted that many railroads, usually as a condition of employment, "insist[ed] on a contract with their employees, discharging the company from liability for personal injuries." Id. Section 5 of FELA "was passed specifically to remedy [that] problem," Wicker , 142 F.3d at 696, and now codified at 45 U.S.C. § 55, it provides in relevant part that "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act, shall to that extent be void."
Releases like the one at issue in this case, however, are not necessarily void under FELA. In 1948, the United States Supreme Court held that a release that was executed in exchange for consideration of $ 265 to settle a worker's claimed back injury did not violate section 5. See Callen , 332 U.S. at 631, 68 S.Ct. 296. According to the court,
[I]t is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility. Where controversies exist as to whether there is a liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation.
As we note above, the Sixth Circuit and the Third Circuit have developed different standards for determining whether a release is valid under section 5. In Babbitt , 104 F.3d at 89, 93, the Sixth Circuit adopted a so-called "known injury" standard, holding that a release is valid if it is limited to the specific injury in controversy.
*682 The Third Circuit, on the other hand, has adopted a more flexible standard, upholding releases of liability for future injuries if the risk of those injuries is known to the parties at the time they negotiate the release. See Wicker , 142 F.3d at 702. Under this "known risk" standard, the language releasing Union Pacific from liability for the future risks of toxic exposure would not violate section 5 if Mr. and Mrs. Murphy knew, at the time they executed the release, that Mr. Murphy was at risk of developing future "cancers ... and/or death" from the "Occupational Exposures" listed in the release.
We choose to follow the majority of state and federal courts that have held Wicker is the better standard. Babbitt 's bright-line rule limiting valid releases to accrued claims "requires an unrealistic view on how parties compromise claims" and may have "a chilling effect on the resolution or compromise of any claims." Oliverio v. Consol. Rail Corp. , 14 Misc.3d 219, 822 N.Y.S.2d 699, 701-02 (N.Y. Sup. Ct. 2006). That is particularly true
with respect to claims based upon exposure to [toxic substances], where effects of the exposure may be latent for a considerable period of time. If a new claim were permitted for each and every new manifestation of the [toxic] exposure, regardless of the extent of the parties' awareness of such risks, there would be no incentive on the part of the railroad defendant to ever compromise such claims. This result would not further the public policy of encouraging settlement of claims.
Id. at 702. We also agree that the known-risk approach in Wicker "provides a [more] realistic view of compromises and releases" because it "permits enforcement not only for the specific injuries already manifested at the time of its execution but also any risks of future injury which the parties specifically contemplated in its execution, so long as those risks are properly within the ambit of the claim compromised." Id.
It is not evident from the record that the circuit court applied Wicker when it determined that the 2007 release was valid under section 5 of FELA. Accordingly, the circuit court's order granting summary judgment is reversed, and the case is remanded for a determination of whether the 2007 release is valid under Wicker 's known-risk standard, applying it to the record that the parties have already developed.
For her remaining point of appeal, Irene contends the circuit court erred in refusing to consider Mr. Sammons's affidavit in deciding whether to grant summary judgment. The circuit court's stated bases for rejecting the affidavit are somewhat troublesome. With our reversal of the grant of summary judgment and our remand for further proceedings consistent with this opinion, we direct the circuit court to reconsider the appropriateness of the Sammons affidavit in deciding Union Pacific's summary-judgment motion under Wicker .
The circuit court set forth four bases for rejecting the Sammons affidavit, reasoning 1) it was comprised of Sammons's opinions on how the court should rule; 2) it did not comply with Rule 56(e) of the Arkansas Rules of Civil Procedure ; 3) Sammons was not trustworthy; and 4) it contained statements that, absent a waiver of attorney-client privilege from Alton Murphy, violated the attorney-client privilege. Bases 1) "opinions" and 2) " Rule 56(e)" are part and parcel of the same rationale. Arkansas Rule of Civil Procedure 56(e) provides in part that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent *683 to testify to the matters stated therein." The circuit court found that the Sammons affidavit expressed opinions rather than facts. Our review of the affidavit convinces us the circuit court was mistaken in this conclusion. We conclude the affidavit contained statements of fact-not opinion-and they were based on Sammons's personal knowledge. We therefore further conclude that the requirements of Rule 56(e) were satisfied. We express no opinion, however, on whether the affidavit creates a material issue of fact under a Wicker analysis.
With respect to basis 3), "trustworthiness," the circuit court did not consider the affidavit because it found Sammons was "not trustworthy." Deciding matters of credibility is generally not appropriate when deciding a summary-judgment motion. Here, there has been no showing that Sammons's affidavit was contradicted by prior sworn testimony. See Caplener v. Bluebonnet Milling Co. , 322 Ark. 751, 911 S.W.2d 586 (1995).
Regarding basis 4), "attorney-client privilege," without either party having raised an issue concerning attorney-client privilege, the circuit court interjected in its order granting summary judgment to Union Pacific that the affidavit "contains statements that, without a waiver from Alton Murphy, violate the attorney-client privilege." This privilege is for a proper party to raise; courts generally do not raise it for a party. Therefore, the circuit court's rejection of the affidavit based on the absence of a waiver of the attorney-client privilege from Alton Murphy was also misguided.
We direct the circuit court, in further proceedings consistent with this opinion, to reconsider the appropriateness of the affidavit and whether it does or does not create a genuine issue of material fact as it determines whether summary judgment should be granted under Wicker .
Reversed and remanded.
Harrison and Klappenbach, JJ., agree.