JAQUA v CANADIAN NATIONAL RAILROAD, INC

Docket No. 268506. Submitted January 9, 2007, at Detroit. Decided March 6, 2007, at 9:10 a.m.

John Jaqua brought an action in the Wayne Circuit Court against his employer, Canadian National Railroad, Inc., under the Federal Employers' Liability Act (FELA), 45 USC 51 *et seq.*, for injuries he allegedly suffered from workplace exposure to asbestos. Jaqua had signed an agreement purporting to release the defendant from liability for personal injury claims arising from occupational illnesses related to asbestos exposure. Jaqua died of lung cancer shortly after the complaint was filed, and the personal representative of his estate, Therese A. Jaqua, amended the complaint to include a wrongful death claim. The trial court, Robert L. Ziolkowski, J., denied the defendant's motion for summary disposition, ruling that, under a decision of the Sixth Circuit Court of Appeals interpreting § 5 of FELA, the release applied only to those illnesses Jaqua had when he signed it, which included asbestosis but not cancer. The defendant appealed.

The Court of Appeals *held*:

1. When deciding a case under federal law, the Court of Appeals is bound only by decisions of the United States Supreme Court; it is not bound to follow decisions of a particular federal circuit.

2. The United States Supreme Court has held that, to be enforceable under § 5 of FELA, a release of liability must relate to a specific claim, and the release must specify that it is intended to settle the employee's claim that the employer is liable for causing the exposure or accident that led to the injuries. The Sixth Circuit ruling that the trial court followed was overly broad in that it appears to hold that a release executed as part of a settlement cannot bar claims if the employee's condition worsens or if an additional illness develops because of the same accident or exposure, even if the additional illness or worsened condition is explicitly contemplated by the release. The Third Circuit offers a better analysis, which allows an employee to execute a valid release pursuant to a settlement for a specific accident or exposure

if the scope of the release is limited to those risks that the parties knew when the release was signed.

3. The release at issue is a valid settlement or compromise and cannot be construed as an attempt by the railroad to escape liability, because Jaqua and his counsel knew that Jaqua was at risk of developing cancer and Jaqua specifically settled claims regarding cancer and any other illnesses related to his asbestos exposure. Accordingly, the plaintiff's claim is barred.

Reversed.

1. COURTS — FEDERAL LAW — INTERPRETATION.

When deciding a case under federal law, state courts are bound only by decisions of the United States Supreme Court; they are not bound to follow decisions of a particular federal circuit.

2. RAILROADS — FEDERAL EMPLOYERS' LIABILITY ACT — RELEASES FROM LIABILITY.

An employee may release an employer from liability for future injuries or conditions under § 5 of the Federal Employers' Liability Act pursuant to a settlement for a specific accident or exposure if the scope of the release is limited to those risks that the parties knew when the release was signed (45 USC 55).

*Doran & Murphy, LLP* (by *Michael H. Doran, George S. Adamson,* and *Scott J. Whitbeck*), for the plaintiff.

*Gallagher Sharp* (by *Kevin C. Alexandersen, Sheila A. McKeon, Holly M. Olarczuk-Smith, Colleen A. Mountcastle,* and *Anna S. Fister*) for the defendant.

Before: SAAD, P.J., and CAVANAGH and SCHUETTE, JJ.

SAAD, P.J.

### I. NATURE OF THE CASE

The railroad employer's appeal of the trial court's denial of summary disposition on plaintiff's claim under the Federal Employers' Liability Act (FELA), 45 USC 51 *et seq.*, raises a question of the permissible scope of releases under FELA. Section 5 of FELA prohibits a railroad from requiring employees to sign agreements

that allow the railroad to escape liability imposed under the act. But the United States Supreme Court has also ruled that § 5 does not prevent an employer from settling a specific claim and controversy with an employee. The narrow question here is whether § 5 permits a release of only *known injuries* or conditions that exist at the time of the release, as the Court of Appeals for the Sixth Circuit has ruled, or whether § 5 also permits the release of *known risks* of future injuries or conditions, as the Court of Appeals for the Third Circuit has ruled.

In this case, the employee released his employer from liability for asbestos exposure and asbestosis, which was a condition he had at the time of the release, but he also released his employer for liability for cancer, a condition he knew he was at risk of developing in the future. The trial court relied on the Sixth Circuit's decision in *Babbitt v Norfolk & W R Co*, 104 F3d 89 (CA 6, 1997), and denied the railroad's claim that the lawsuit is barred by the release. We reverse because we adopt the ruling of the Third Circuit in *Wicker v Consolidated Rail Corp*, 142 F3d 690 (CA 3, 1998), which offers the better reasoned result. The rationale in *Wicker* allows the employer and the employee the freedom to negotiate and settle claims, but protects the employee from releasing the employer for unknown liability that was not considered and resolved in an informed manner. Here, the employee's doctor advised him that he was at risk of developing lung cancer and the employee negotiated, with the help of counsel, to settle that known risk, as well as existing injuries. Thus, pursuant to *Wicker*, the employee or his estate may not sue to recover for cancer because it was the very same risk for which the employee received settlement proceeds. Accordingly, we reverse the trial court's denial of summary disposition.

II. FACTS

On August 9, 2004, John Jaqua filed a complaint under FELA for injuries he allegedly sustained while working for the defendant railroad. Jaqua specifically alleged that he contracted cancer because, during his 38 years as a railroad employee, he was exposed to asbestos and asbestos dust. Jaqua died of lung cancer on September 15, 2004, and the personal representative for his estate amended the complaint to assert a claim for wrongful death.[1]

Defendant filed a motion for summary disposition and argued that plaintiff's claim is barred because, on December 4, 2002, Jaqua signed an agreement that released defendant from personal injury claims for occupational illnesses, including cancer. In response, plaintiff argued that the agreement is only valid to the extent it released claims for illnesses Jaqua suffered at the time he signed the agreement, which only included asbestosis, not cancer. The trial court agreed with plaintiff and denied defendant's motion.

The release provides, in relevant part:

> WHEREAS, the Undersigned alleges that the Releasees were negligent and/or violated the Federal Employers Liability Act, among other things, in allowing an allegedly unsafe work condition to exist that the Undersigned alleges created an exposure or exposures to asbestos . . . or other agent. The Undersigned asserts that such exposure caused a condition, injury, disease and/or deficiency in the Undersigned including, but not limited to plaques, calcifications, thickening, asbestosis, silicosis, severe and permanent injuries to the lungs, respiratory system, nerves and/or nervous system, cancer, and any and all other conditions, diseases or injuries existing prior to the date of this Release

---

[1] For ease of reference, we refer to the personal representative as "plaintiff" throughout this opinion.

Agreement which are known to the Undersigned or reasonably could have been known prior to the date of this Release Agreement and which may further develop in the future as a result of what now exists, arising from or as a result of the alleged exposures or which may further develop as a result of the Undersigned's current known conditions, which allegedly developed over time while working in the Grand Trunk Western Railroad Incorporated's employ.

\* \* \*

The Undersigned declares and represents that the injuries and illnesses which have been sustained, including mental conditions, resulting from exposure to any substance, condition or environment or a belief that Undersigned was exposed to any substance, condition or environment are, or may be permanent, and that recovery therefrom is uncertain and indefinite and that they may cause or lead to other deleterious conditions. In making this Release, it is understood and agreed that the Undersigned relies wholly upon the Undersigned's own judgment, belief, and knowledge of the nature, extent, effect, duration, and other possible results of said illnesses, conditions, exposures, and liability therefore, and that this Release is made without reliance upon any statement or representation by Releasees or their representatives, the making of any such statements or representations being specifically denied.

\* \* \*

WHEREAS, the Undersigned and Releasees wish to finally compromise all claims, demands, and liabilities which are known against each other for the above-referenced pulmonary conditions of Undersigned involving the alleged negligence and/or violation of the Federal Employers Liability Act of Releasees in their alleged failure to provide a reasonably safe workplace.

\* \* \*

For the good and valuable consideration received under this Release and Settlement Agreement, receipt of which is hereby acknowledged, the Undersigned releases and forever discharges Releasees from any and all claims, demands, causes of action, obligations, damages and liabilities, arising in tort and/or under the Federal Employers Liability Act . . . .

* * *

IT IS FURTHER UNDERSTOOD AND AGREED that the pulmonary and/or respiratory injuries from which Undersigned allegedly suffers are of a kind and nature that the underlying pathology and/or symptoms might worsen in the future as the natural progression of this pathology or with normal aging, and the Undersigned is voluntarily accepting the risk of future worsening of his conditions and knowingly waives and releases any and all claims of the same. . . .

IT IS FURTHER UNDERSTOOD AND AGREED that this Release and Settlement Agreement is intended by the parties to release any and all existing claims for the injuries or conditions suffered or alleged to have been suffered as a result of the above-referenced exposures by the Undersigned as a result of the Undersigned's years of service with the Grand Trunk Western Railroad Incorporated, including any aggravation of any pre-existing condition or progression of any condition, known or which reasonably could have been known by the Undersigned.

Defendant contends, and we hold, that the release is enforceable as written and it bars plaintiff's claim for damages for Jaqua's cancer.

### III. ANALYSIS

#### A. APPLICABLE LAW: FEDERAL LAW CONTROLS UNDER FELA

This case arises under FELA, and the validity of the release is controlled by federal law. As this Court

explained in *Boyt v Grand Trunk W R,* 233 Mich App
179, 183; 592 NW2d 426 (1998):

> In state courts, a review of a claim arising under the
> FELA is to be made in accordance with federal law. *Norfolk
> & W R Co v Liepelt,* 444 US 490, 492; 100 S Ct 755, 62 L Ed
> 2d 689 (1980); *Blake v Consolidated Rail Corp,* 176 Mich
> App 506, 517; 439 NW2d 914 (1989). However, such a case
> is subject to state procedural rules.[2] *Gortney v Norfolk &
> W R Co,* 216 Mich App 535, 538; 549 NW2d 612 (1996).

The parties dispute which federal circuit court decision
governs this action. Specifically, the parties question
whether this Court is required to follow the Sixth
Circuit's opinion in *Babbitt* or whether it may follow a
decision from another federal circuit. Our Supreme
Court answered this question in *Abela v Gen Motors
Corp,* 469 Mich 603, 606; 677 NW2d 325 (2004):

> Although state courts are bound by the decisions of the
> United States Supreme Court construing federal law,
> *Chesapeake & O R Co v Martin,* 283 US 209, 220-221; 51 S
> Ct 453, 75 L Ed 983 (1931), there is no similar obligation
> with respect to decisions of the lower federal courts. *Winget
> v Grand Trunk W R Co,* 210 Mich 100, 117; 177 NW2d [sic]
> 273 (1920). See generally 21 CJS, Courts, § 159, pp 195-
> 197; 20 Am Jur 2d, Courts, § 171, pp 454-455.

In other words, "[a]lthough lower federal court deci-
sions may be persuasive, they are not binding on state
courts." *Abela, supra* at 607.

Here, there are United States Supreme Court cases
that address the legal issues presented by the parties,

---

[2] Michigan appellate courts review a trial court's decision on a motion
for summary disposition de novo. *Prentis Family Foundation v Barbara
Ann Karmanos Cancer Institute,* 266 Mich App 39, 43; 698 NW2d 900
(2005). To reach a decision, we examine the documents submitted by the
parties to determine whether the moving party is entitled to judgment as
a matter of law. *Davis v Detroit,* 269 Mich App 376, 378; 711 NW2d 462
(2005).

including the scope of FELA's § 5. Accordingly, this Court is bound to follow those rulings. However, this Court is not bound to follow a particular circuit's decision and may choose the view it determines to be most appropriate as long as it comports with the Supreme Court's decisions. See *MacInnes v MacInnes*, 260 Mich App 280, 286 n 3; 677 NW2d 889 (2004).

As set forth earlier, the release agreement states that, according to Jaqua, during his employment from 1950 to 1988, he was exposed to asbestos and the exposure caused asbestosis and other injuries to his lungs and respiratory system, including cancer. The document further provides that, in exchange for a cash settlement, Jaqua released all tort and FELA claims for diseases or illnesses that arose before the parties entered into the agreement as well as illnesses Jaqua might foreseeably develop because of the exposure. The release specifically contemplates that Jaqua's condition could worsen or that additional pulmonary illnesses could develop.

It is undisputed that the party attacking the validity of a FELA release has the burden to establish that it is invalid. *Callen v Pennsylvania R Co,* 332 US 625, 630; 68 S Ct 296; 92 L Ed 242 (1948). Plaintiff does not contend that the release agreement is ambiguous, and the language the parties employed shows that Jaqua unequivocally waived claims for any existing asbestosis and cancer, as well as any claims related to the progression or worsening of his pulmonary illnesses.

Notwithstanding the plain language of the release, plaintiff contends, and the trial court agreed, that, pursuant to *Babbitt,* § 5 of FELA, 45 USC 55, prohibits the enforcement of the agreement. 45 USC 55 provides:

> Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common

carrier to exempt itself from any liability created by this chapter, shall to that extent be void: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

In *Wicker, supra* at 696, the Third Circuit explained the purpose and history of FELA and of 45 USC 55:

> In 1908, FELA "was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant." *Rogers v. Missouri Pacific R. Co.,* 352 U.S. 500, 507; 77 S. Ct. 443, 449; 1 L. Ed. 2d 493 (1957). Congress sought to "ensure that the employees' suits would not be defeated by the same devices which Congress perceived to have been used in the immediate past by the railroads to avoid liability." *Damron v. Norfolk & W. Ry. Co.,* 925 F. Supp. 520, 523 (N.D. Ohio, 1995). Thus, FELA was designed "to enable injured railroad workers to overcome a number of traditional defenses to tort liability that had previously operated to bar their actions." *Lewy v. Southern Pac. Transp. Co.,* 799 F.2d 1281, 1287 (9th Cir. 1986). For example, the Act abolished the doctrine of assumption of risk, applied comparative rather than contributory negligence, and sought to prevent employers from contracting out of FELA liability. *See* S. Rep. 460, 60th Cong., 1st Sess. 2-3 (1908). With respect to the last of these, Congress noted that many railroads "insist[ed] on a contract with their employees, discharging the company from liability for personal injuries." H.R. Rep. 1386, 60th Cong. 1st Sess. 6 (1908). Section 5 was passed specifically to remedy this problem.

In *Babbitt, supra* at 91, the Sixth Circuit observed that "45 U.S.C. § 51 of FELA provides that the purpose of the Act is to hold a negligent employer liable for injuries suffered by an employee." The panel cited 45 USC 55,

and reiterated that an employer may not contract with an employee for the purpose of exempting itself from liability. *Id.* at 92. But the *Babbitt* court further explained:

> However, 45 U.S.C. § 55 is not without its exceptions. As Norfolk correctly argues, the Supreme Court has held that a release of FELA claims can have the same effect as any other release, in that it may constitute a settlement or compromise, rather than an attempt to escape liability.

In *Babbitt*, the plaintiffs signed release agreements as part of the railroad's early retirement program, and they later sued the railroad to recover for hearing loss that they claimed resulted from exposure to excessive noise at work. *Id.* at 90. The agreement generally released the railroad's liability for all claims, known or unknown, arising out of the plaintiffs' employment. *Id.* at 91. In analyzing the effect of the release, the *Babbitt* court considered three Supreme Court cases that involved releases and subsequent FELA claims: *Callen, supra*; *Philadelphia, Baltimore, & Washington R Co v Schubert*, 224 US 603; 32 S Ct 589; 56 L Ed 911 (1912); and *Duncan v Thompson*, 315 US 1; 62 S Ct 422; 86 L Ed 575 (1942). In *Callen*, the plaintiff sued for injuries he sustained in a railroad accident after he signed a general release agreement that, in exchange for a cash payment, waived any claim for injuries he sustained in the accident. *Callen, supra* at 626-627. The *Callen* Court upheld the validity of the release because it was "not a device to exempt from liability but [was] a means of compromising a claimed liability . . . ." *Id.* at 631. In other words, the Court recognized that 45 USC 55 is not violated by a release that settles a "controversy" with regard to the employer's liability and the extent of that liability for a particular accident or exposure. *Id.*

In *Schubert*, the plaintiff contributed a portion of his salary to a "relief fund" until he was injured on the job. *Schubert, supra* at 606. He received benefits from the fund, but then filed a FELA claim for damages. *Id.* at 608. The railroad company argued that the plaintiff's claims were barred because he agreed, as a member of the relief fund, that if he collected from the fund, he would release all personal injury claims against his employer. *Id.* at 606-608. The Supreme Court ruled that the release did not preclude the plaintiff's claim for damages because the purpose of the general release was to provide immunity to the railroad for any injury resulting in collection from the relief fund, in direct violation of 45 USC 55. *Id.* at 611-612.

In *Duncan*, the plaintiff was injured after he fell from a locomotive and, when he continued to suffer from his injuries, his employer paid $600 toward his living expenses in exchange for his agreement to "endeavor, in good faith, to adjust and settle any claim 'for injuries' without resorting to litigation." *Duncan, supra* at 2-3. As the *Babbitt* court summarized, the Supreme Court ruled that the release did not bar the plaintiff's later FELA claim because "[t]he money that was exchanged was earmarked for living expenses, not settlement purposes, and the promise that was procured was given in exchange for a promise not to sue." *Babbitt, supra* at 92, citing *Duncan, supra* at 7-8. The *Babbitt* court observed that, unlike *Callen*, in which the railroad and the employee entered into an agreement to settle the railroad's liability for the plaintiff's specific injuries, *Duncan* and *Schubert* involved general releases that "granted general immunity to the railroad, as opposed to addressing a specific instance of disputed liability . . . ." *Babbitt, supra* at 92-93. The *Babbitt* court further explained:

> Consequently, where there exists a dispute between an employer and employee with respect to a FELA claim, the parties may release their specific claims as part of an out-of-court settlement without contravening the Act. However, where the release was not executed as part of a specific settlement of FELA claims, 45 U.S.C. § 55 precludes the employer from claiming the release as a bar to liability. *Schubert,* 224 U.S. at 612, 32 S. Ct. at 591-92. To be valid, a release must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him. [*Id.* at 93.]

Because the district court in *Babbitt* failed to decide whether the general releases signed by the plaintiffs as part of the retirement program were intended to resolve the plaintiffs' specific claims of hearing loss, the Sixth Circuit remanded *Babbitt* for further proceedings. *Id.*

Clearly, the Supreme Court requires that the release be pursuant to a "controversy" with regard to the employer's liability and the extent of that liability for a particular accident or exposure. *Callen, supra* at 631. Accordingly, a release must relate to a specific claim, such as a railroad's liability for injuries caused by asbestos exposure, rather than being a blanket release of liability for any occupational illnesses. Also, the release must specify that it is intended to settle the employee's claim that the employer is liable for causing the exposure or accident that led to the injuries. However, because it is broadly worded, *Babbitt* appears to hold, and other courts have interpreted *Babbitt* as holding, not only that the release must relate to a settlement of liability for injuries caused by a particular accident or exposure, but that, when the employee signs the release, he or she must be suffering from the precise injury raised in the later FELA action. In other words, *Babbitt* appears to hold that a release executed as part

of a settlement for an accident or exposure cannot bar claims arising when the employee's condition worsens, or when an additional illness develops because of the same accident or exposure, even if the additional illness or worsened condition is explicitly contemplated by the release. However, nothing in *Callen, Duncan,* or *Schubert* suggests that an employee cannot settle his or her claims for injuries the parties know or have reason to know may worsen, spread, or lead to additional medical complications, and, therefore, we believe that *Babbitt*'s holding is overly broad.

The Third Circuit offers the better analysis—that a release is valid under § 5 if it is executed pursuant to a settlement for a specific accident or exposure "and the scope of the release is limited to those risks which are known to the parties at the time the release is signed." *Wicker, supra* at 701. In *Wicker,* the plaintiffs signed releases to settle claims for personal injuries they sustained while employed with the defendant railroad. *Wicker, supra* at 692. Specifically, two of the plaintiffs sustained injuries related to asbestos exposure and three sustained back injuries. *Id.* at 692-693. Each plaintiff signed release agreements that purported to "settle all claims for all injuries past and future." *Id.* at 692. However, the plaintiffs later "suffered injuries as a result of exposure to toxic chemicals" at one of the railroad's plants. *Id.* They filed complaints and alleged that the releases were unenforceable because they violated FELA, 45 USC 55. *Id.* at 694. The plaintiffs argued that they did not know about injuries related to the chemical exposure until after they signed the releases and that the releases were too general to be enforceable. *Id.* at 695. In response, the railroad argued that the releases clearly settled all past and future claims and that, regardless, each plaintiff suffered symptoms of chemical-related injuries before signing

the releases and that, therefore, they "were on notice of a potential health problem at that time." *Id.*

After reviewing the history of FELA, the *Wicker* court considered the Supreme Court's opinions in *Callen, Duncan,* and *Schubert,* and concluded:

> The language [of *Callen*] is clear. Releases are not *per se* invalid under FELA. Although the Court did not explain what will qualify as a "compromis[e] [of] a claimed liability" it did say that parties may settle "[w]here controversies exist as to whether there is liability, and if so for how much." The explicit requirement is that a controversy must exist. [*Id.* at 697.]

The *Wicker* court noted that the plaintiffs' claims were unrelated to those that apparently prompted the release agreements. *Id.* at 699. The court also discussed the Sixth Circuit's opinion in *Babbitt* and observed that it "appears to establish a broad, legal rule prohibiting the use of general releases in cases such as this." *Id.* However, the *Wicker* court observed that, in *Babbitt,* the releases were signed as part of a voluntary, early-retirement program offered to all employees "and were not the product of negotiations settling a claim" between the employee and the employer. *Id.* at 700. The court further observed:

> A bright line rule like the one set forth in *Babbitt,* limiting the release to those injuries known to the employee at the time the release is executed, has the benefit of predictability. Under *Babbitt,* "a release must reflect a bargained-for-settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him." [*Babbitt, supra*] at 93. The Sixth Circuit noted that the releases in *Schubert* and *Duncan* were void because they "granted general immunity to the railroad as opposed to addressing a specific instance of disputed liability." *Id.*

Yet, it is entirely conceivable that both employee and employer could fully comprehend future risks and potential liabilities and, for different reasons, want an immediate and permanent settlement. The employer may desire to quantify and limit its future liabilities and the employee may desire an immediate settlement rather than waiting to see if injuries develop in the future. To put it another way, the parties may want to settle controversies about potential liability and damages related to known risks even if there is no present manifestation of injury. [*Id.* at 700-701.]

The *Wicker* court held that "a release does not violate § 5 provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those risks which are known to the parties at the time the releases is signed." *Id.* at 701. In other words, "a release that spells out the quantity, location and duration of potential risks to which the employee has been exposed—for example toxic exposure— allowing the employee to make a reasoned decision whether to release the employer from liability for future injuries of specifically known risks does not violate § 5 of FELA." *Id.*

We agree with and adopt the rationale of *Wicker*. In *Oliverio v Consolidated Rail Corp*, 822 NYS2d 699, 701-702 (2006), the New York Supreme Court adeptly explained why *Wicker* offers the better approach:

As the court in *Wicker* noted . . . the evaluation of the parties' intent at the time of the execution of the release is an essential element in the inquiry of its enforceability. Any intention to prevent a claim unrelated to the one compromised would be void under [45 USC 55]. However, courts have specifically allowed a release to compromise a specific claim or claims, and to prevent reassertion of that claim at a later date. The adoption of the *Babbitt* approach requires that the parties know of the specific injury; the adoption of the *Wicker* approach requires that the parties know of the specific risk. While this court agrees that the *Babbitt*

approach's bright line test may be easier to apply to a particular claim, its adoption would prevent any compromise to be made for such damage items as "fear of cancer" or "risk of permanency" despite the fact that the parties may intend for the compromise to specifically cover those items of damage. To adopt the *Babbitt* approach requires an unrealistic view on how parties compromise claims. And while it may appear that the approach may enable an easier resolution of the manner in which a release is enforced, the result may be either more complicated inquiry into the exact nature and scope of the injury compromised, or a chilling effect on the resolution by compromise of any claims. This is particularly true with respect to claims based upon exposure to asbestos, where effects of the exposure may be latent for a considerable period of time. If a new claim were permitted for each and every new manifestation of the asbestos exposure, regardless of the extent of the parties' awareness of such risks, there would be no incentive on the part of the railroad defendant to ever compromise such claims. This result would not further the public policy of encouraging settlement of claims.

For these reasons, the *Wicker* approach is the better approach. It permits the enforcement of the release for not only the specific injuries already manifested at the time of its execution, but also any risks of future injury which the parties specifically contemplated in its execution, so long as those risks are properly within the ambit of the claim compromised. This approach provides a realistic view of compromises and releases, while staying true to the prohibition on blanket relinquishments of rights under FELA.

We agree that *Wicker* is consistent with § 5 as well as the Supreme Court's opinions in *Callen, Schubert,* and *Duncan*, without unnecessarily broadening or narrowing the scope of the rule. Accordingly, and for the reasons stated in *Oliverio, supra,* we adopt the reasoning in *Wicker* here.

B. APPLYING *WICKER*

Under the Supreme Court cases and *Wicker*, the release here is a valid settlement or compromise and cannot be construed as an attempt by the railroad to escape liability. Clearly, Jaqua and his counsel knew that Jaqua was at risk of developing cancer, and Jaqua specifically settled claims regarding cancer as well as any other illnesses related to his asbestos exposure.[3] The release addressed a specific instance of disputed liability and specific injuries that Jaqua suffered, or was at great risk of suffering in the future—asbestosis and lung cancer. The record also reflects that Jaqua negotiated and settled his claims and signed a clear and unequivocal release with the advice and assistance of counsel. Accordingly, the release is enforceable.

We also agree with defendant that, because Jaqua executed a valid release of any claim for lung cancer, his estate may not recover damages for his asbestos exposure pursuant to *Mellon v Goodyear*, 277 US 335; 48 S Ct 541; 72 L Ed 906 (1928). As the Court in *Mellon* explained, "[a] settlement by the wrongdoer with the injured person, in the absence of fraud or mistake, precludes any remedy by the personal representative based upon the same wrongful act." *Id*. at 344. Accordingly, plaintiff's claim is barred. Therefore, plaintiff's

---

[3] Plaintiff argues that this Court should reject *Wicker* and that this Court already adopted the rule set forth in *Babbitt* in *Stephens v CSX Transp, Inc*, unpublished opinion per curiam of the Court of Appeals, issued March 19, 2002 (Docket No. 225003). *Stephens* is clearly distinguishable because the disputed release in that case specifically exempted new and distinct conditions from the settlement of liability and a new and distinct condition arose. Here, even if cancer is considered a new and distinct condition, it was specifically *included* in and covered by the release. Accordingly, and because *Stephens* is unpublished, plaintiff's reliance on the opinion is unavailing. *Beyer v Verizon North Inc*, 270 Mich App 424, 431; 715 NW2d 328 (2006).

claim for damages resulting from Jaqua's lung cancer is barred by the release and the trial court should have granted summary disposition to defendant.

Reversed.