KITCHENS, PRESIDING JUSTICE, DISSENTING:
 

 ¶26. Were this case governed by general contract law, I might agree with the majority's position that no genuine issues of material fact exist on whether Larry Seward waived his right to recover from Illinois Central Railroad for the brain cancer that ultimately killed him. But this case arose under the Federal Employers' Liability Act (FELA), which was intended "to provide liberal recovery for injured workers."
 
 Kernan v. Am. Dredging Co.
 
 ,
 
 355 U.S. 426
 
 , 432,
 
 78 S.Ct. 394
 
 ,
 
 2 L.Ed. 2d 382
 
 (1958) (citing
 
 Rogers v. Mo. Pac. R.R. Co.
 
 ,
 
 352 U.S. 500
 
 , 508-10,
 
 77 S.Ct. 443
 
 ,
 
 1 L.Ed. 2d 493
 
 (1957) ). Section 5 of FELA provides, in part, that "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void."
 
 45 U.S.C. § 55
 
 (2012). Although this Court has adopted the analysis of
 
 Wicker v. Consolidated Rail Corp.
 
 ,
 
 142 F.3d 690
 
 , 701 (3d Cir. 1998), that under section 5 an employee may release known risks, claims relating to unknown risks may not be released.
 
 Wicker
 
 emphasized that the inquiry into the employee's intent is fact intensive and that the written release does not control.
 

 Id.
 

 Here, the attorney who represented Seward in negotiating the release averred that his understanding had been that the release covered Seward's lung injury claims, not future brain cancer. I find that this evidence, along with the language of
 the release and pulmonary questionnaire, created genuine issues of material fact on the question of whether Seward intended to release his claim for brain cancer. Therefore, I would reverse the grant of summary judgment and would remand the case for further proceedings.
 

 ¶27. In 2005 Seward entered into settlement, and, in the same year, he executed the release which provided, in part, that
 

 WHEREAS, the Undersigned alleges that one or more of the Releasees were negligent and/or violated the Federal Employer's Liability Act, the same being the subject of
 
 Bobby McElhenney, et al. v. Illinois Central Railroad
 
 ... in allowing an allegedly unsafe work condition to exist that the Undersigned alleges created an exposure or exposures to asbestos, coal, coal dust, welding fumes, brass fumes, diesel fumes, dust, paint vapors, fuel fumes, methyl bromide, ammonia gas, sand, silica, Dow Clean, solvents, cleaners, degreasers, and other fumes, dusts, mites, gases, and vapors from any material, chemical, toxin or other agent. The Undersigned asserts that any such exposure caused a condition, injury, disease and/or deficiency (hereinafter, referred to as "condition") in the Undersigned including, but not limited to plaques, calcifications, thickening, pneumoconiosis including asbestosis and silicosis, severe and permanent injuries to the lungs, respiratory system, nerves and/or nervous system, cancer, and any and all other conditions, diseases or injuries existing prior to the date of this Release Agreement which are known to the Undersigned or reasonably could have been known prior to the date of this Release Agreement and which may further develop in the future as a result of what now exists, arising from or as a result of the alleged exposures or which may further develop as a result of the Undersigned's current known or unknown conditions, which allegedly developed over time while working in one or more of the releases employ, which are expressly released herein.
 

 In conjunction with the settlement and release, Seward filled out a document titled "Pulmonary Questionnaire." Seward indicated on the Pulmonary Questionnaire that he had been exposed to asbestos, diesel exhaust, silica, solvents, degreasers, coal, chemicals, and weed spray for several hours per day, six days per week, for forty-one years. He listed his known medical diagnoses as asbestosis, bronchitis, and pneumonia, all of which are respiratory diseases. In 2007, Seward was diagnosed with anaplastic oligodendroglioma, a rare form of primary brain cancer. He died in 2008, and his representative, Andrew Ward, brought this action.
 

 ¶28. Attorney Robert N. Peirce, Jr., had represented Seward in the settlement negotiations. In an affidavit taken for this case, Peirce said that he had represented Seward "for damage to his lungs due to asbestos exposure" in a lawsuit filed in Holmes County, Mississippi, on December 19, 2002. Peirce said that he and Seward had been unaware that Seward had been exposed to "chemicals which ultimately would cause him to contract primary brain cancer, specifically anaplastic oligodendroglioma." Further, Peirce averred, he had not negotiated with Illinois Central to recover damages for injuries other than the lung injury but would have demanded additional compensation had he known Seward would develop brain cancer. Peirce said that neither he nor any other attorney had discussed with Seward the risk that he could develop primary brain cancer in the future.
 

 ¶29. In
 
 Illinois Central Railroad Co. v. Acuff
 
 ,
 
 950 So.2d 947
 
 (Miss. 2006), this
 Court adopted
 
 Wicker
 
 's "approach allowing the release of future claims based on specific risks known to the parties to be appropriate."
 

 Id.
 

 at 960
 
 . "[T]he key inquiry is whether or not the risk of developing [the claimed injury] was known and contemplated ... at the time [the employee] signed [the] release."
 

 Id.
 

 In
 
 Acuff
 
 , we recognized that "[u]nder general contract law, parties are usually free to contract away their rights, ... [h]owever, releases extinguishing an employee's claims for injuries under FELA are held to a higher standard ...."
 

 Id.
 

 Therefore, the language of the release is not conclusive.
 
 Wicker
 
 ,
 
 142 F.3d at 701
 
 . "Where a specific known risk or malady is not mentioned in the release, it would seem difficult for the employer to show it was known to the employee and that he or she intended to release liability for it."
 

 Id.
 

 A release that includes a "laundry list of diseases" may be attacked as boilerplate and not reflective of the employee's intent.
 

 Id.
 

 Testimony by the plaintiff and affidavits of attorneys who represented the parties at the time of a settlement and release are considered relevant evidence of intent.
 
 Acuff
 
 ,
 
 950 So.2d at
 
 961 (citing
 
 Wicker
 
 ,
 
 142 F.3d at
 
 695 ). Overall, the determination of whether a plaintiff's claim is barred by a prior release is "a fact-intensive process."
 
 Acuff
 
 ,
 
 950 So.2d at 961
 
 (quoting
 
 Wicker
 
 ,
 
 142 F.3d at
 
 701 ).
 

 ¶30. The majority acknowledges this standard, then concludes that, even after considering the evidence in the light most favorable to the plaintiff, no genuine issues of material fact exist about Seward's intent to waive his claim for brain cancer. I would find that a proper application of the standard yields a different conclusion: that genuine issues of material fact most certainly are present in this case. The majority finds no genuine issues of material fact on whether the release was boilerplate, because Peirce did not testify that it was boilerplate, and because the release is somewhat more specific than the releases in
 
 Wicker
 
 . With respect to the majority, the absence of testimony from Peirce is irrelevant because the release
 
 itself
 
 provides sufficient evidence to enable a reasonable fact finder to conclude the release was boilerplate.
 
 [5]
 
 The release contains a laundry list of chemical exposures and diseases typical of boilerplate contractual language. In that respect, it is similar to the releases found to be boilerplate in
 
 Wicker
 
 .
 
 Wicker
 
 ,
 
 142 F.3d at 693-94, 701-02
 
 . Yet the majority usurps the fact finder role on this issue and deems the release not boilerplate as a matter of law.
 

 ¶31. The majority then finds no genuine issue of material fact that Seward contemplated his risk of brain cancer when he executed the release, ascribing great importance to the fact that the release listed "cancer" as one of the released conditions. The majority then reasons, "[w]hile Seward may not specifically have known he would develop anaplastic oligodendroglioma, ... cancer was clearly and specifically listed on the release." Maj. Op. ¶ 22. But the release lists "cancer" as an existing condition, not as a future condition for which Seward specifically waived liability should he develop it some time after signing the release. The release says that "any such exposure caused ... cancer, and any and all other conditions, diseases or injuries existing
 
 prior to
 
 the date of this Release Agreement
 
 which are known
 
 to[Seward] and which may further develop in the future as a result of what now exists ...." (Emphasis added.) Thus, an accurate reading of the release shows that it listed "cancer" as an existing condition; future
 conditions effectively were unlimited and included anything "which may further develop in the future as a result of what now exists." There is no dispute that Seward was not diagnosed with brain cancer until after he had signed the release; thus, the brain cancer could have been released only if listed in the category of future claims. This release, most assuredly, did not do that; it did not specifically list cancer, let alone brain cancer, as a potential future claim.
 

 ¶32. Even assuming that Seward should have been expected to foresee from his waiver of an existing cancer claim that he also was waiving a future cancer claim, the term "cancer" is extremely broad, encompassing a multitude of things from melanoma, a skin condition, to lung cancer, to Seward's primary brain cancer.
 
 Wicker
 
 held that a release, to be effective, must recite the "
 
 specific
 
 known risk or malady."
 
 Wicker
 
 ,
 
 142 F.3d at 701
 
 (emphasis added). A reasonable fact finder could conclude that the release signed by Seward lacked the requisite specificity to attribute to him an intent to waive a future claim that the chemicals to which he was exposed at Illinois Central gave him brain cancer. This is especially true considering Peirce's averment that he thought the release was limited to Seward's lung injury, that he did not discuss the risk of brain cancer with Seward before Seward signed the release, and that he was unaware that Seward had been exposed to chemicals that carried a risk of brain cancer. The majority finds that, because the release and pulmonary questionnaire listed some of the same chemicals that Ward now alleges caused Seward's brain cancer, no genuine issues of material fact exist that Seward was on notice of the risk of developing brain cancer from those exposures. But because nothing shows that Seward knew that exposure to any of those chemicals carried a risk of brain cancer, I reject that analysis and would allow the fact finder to make the determination of what Seward knew when he signed the release.
 

 ¶33. The majority relies on two cases that found summary judgment was warranted based on the employee's waiver of a known risk. In
 
 Jaqua v. Canadian National Railroad, Inc.
 
 ,
 
 274 Mich.App. 540
 
 ,
 
 734 N.W.2d 228
 
 (2007), much more evidence was presented than was addressed here that the employee knew of the specific risk before signing the release. The employee had signed a release similar to the release in this case; he released all claims for existing cancer and for diseases that "may further develop in the future as a result of what now exists."
 

 Id.
 

 at 230
 
 . The Court of Appeals of Michigan adopted
 
 Wicker
 
 's known-risk approach and found that summary judgment was appropriate on a lung cancer claim brought by the employee's estate.
 
 Id.
 
 at 555-56,
 
 734 N.W.2d 228
 
 . Critically, it was undisputed that, before the employee had signed the release, his physician had informed him that he was at risk of developing lung cancer.
 
 Id.
 
 at 542,
 
 734 N.W.2d 228
 
 . No such information was given to Seward in advance of his signing the release.
 

 ¶34. And in
 
 Blackwell v. CSX Transportation, Inc.
 
 ,
 
 220 Md.App. 113
 
 ,
 
 102 A.3d 864
 
 (2014), the release itself was much more specific than the release at issue here. The release provided that Blackwell "release[d] and forever discharge[d]" the employer from liability from a claim that he had been exposed to "repetitive stress and cumulative trauma [that] allegedly caused [him] to suffer knee injuries and other injuries, disorders, or diseases of the lower extremities."
 
 Id.
 
 at 866 (third and fourth alterations in original). And the release provided that a substantial portion of the consideration paid to Blackwell had been to compensate him for "the possibility of ... the development of any new or additional
 repetitive stress or cumulative trauma injury either presently existing or that may arise in the future to the lower extremities or other body parts."
 
 Id.
 
 Blackwell had consulted with counsel before signing the release.
 
 Id.
 
 Thus, when Blackwell developed bilateral plantar fasciitis, a foot condition that he claimed had been caused by repetitive trauma on the job, the court found that the injury specifically was covered by the language of the release.
 
 Id.
 
 at 873. Unlike in this case, the release in
 
 Blackwell
 
 was quite specific and was tailored to cover the exact kind of injury that Blackwell later claimed had arisen from his job duties, namely, a repetitive stress injury to the lower extremities.
 

 ¶35. I find that genuine issues of material fact exist on whether the release signed by Larry Seward was boilerplate and whether at the time Seward signed the release he knew and contemplated the risk that his chemical exposures would culminate in brain cancer. Therefore, I would reverse the judgment of the Circuit Court of DeSoto County and would remand the case for trial.
 

 KING, P.J., JOINS THIS OPINION.
 

 Boilerplate
 
 refers to a standard form contract containing generic language.
 
 Wallace v. United Miss. Bank
 
 ,
 
 726 So.2d 578
 
 , 587 (Miss. 1998).