## A98A1852. LOYAL v. NORFOLK SOUTHERN CORPORATION et al.
### (507 SE2d 499)

ELDRIDGE, Judge.

William Loyal filed suit against Norfolk Southern Corporation and Norfolk Southern Railway Company (collectively "Norfolk Southern") under the Federal Employers' Liability Act ("FELA"), 45 USC § 51 et seq., for hearing loss he allegedly sustained related to his employment with the railroad. A Bibb County trial court granted summary judgment to Norfolk Southern. Loyal appeals from that order.

Loyal began employment with Norfolk Southern in 1974 and spent five years as a switchman and eight years as an engineer. In 1987, despite the fact that he had less than 20 years employment with the railroad, Loyal learned that he qualified for a full disability retirement due to a medical condition unrelated to his employment. At the same time, Norfolk Southern offered a compensation package for senior employees who opted for early retirement, with additional benefits in excess of a disability retirement.

Loyal took a disability retirement from the railroad specifically because of his medical condition. Loyal's disability retirement was in no way contingent upon accepting the company's early retirement option.[1] However, Loyal also accepted the early retirement compensation package offered by the railroad that included pension benefits, unpaid wages, earned vacation pay, and $50,000. As a part of the early retirement package, Loyal signed a general release as to all known and unknown occupational diseases and risks, which release stated in pertinent part, as follows: "[I]n consideration of the sum of FIFTY THOUSAND DOLLARS ($50,000), the receipt of which is hereby acknowledged, [I] hereby resign and surrender any right to employment by [Norfolk Southern], and hereby release and forever discharge [Norfolk Southern] from any claim (with the exception of

---

[1] The record negates the implication made during oral argument that Loyal's medical disability retirement could have been denied had he not also opted for early retirement and signed the release. In fact, Loyal specifically testified that he qualified for a medical disability retirement, even without 20 years of service. Loyal testified that "at the same time they were offering to buy seniority of engineers, reduction of forces, whereby they paid $50,000 if you were to give up your seniority. So at the time they came up with that, I found out that I could go on the railroad disability."

vested pension rights), demand, action or cause of action, of any kind whatsoever, known or unknown, which I have or could have on account of, or in any manner arising out of or connected with, my employment."

Thereafter, Loyal received a compensation check for $34,240.63 ($50,000 minus taxes). In addition, he began receiving disability retirement benefits.[2]

Nine years later, in the spring of 1996, Loyal saw a notice in his local newspaper advertising "Free health screening for railroad workers" at the Landmark Hotel in Augusta. The screening was sponsored by the Florida law firm of Collins & Wichrowski. Loyal attended the free health screening at the hotel. Among other tests, an audiogram hearing test was performed. At that time, "[i]t was told to me that I had a definitive hearing loss according to that graph." It was only after this hearing test that Loyal first "became aware that [he] had this hearing loss." Apparently, job-related mandatory hearing tests performed prior to his retirement did not indicate any injury. According to Loyal, "I really wasn't — it's just been since I had a hearing test done that I really knew that I did have a hearing problem and have really noticed it so much more."

On September 30, 1996, Loyal and two other retired railroad employees allegedly suffering employment-related hearing loss filed the instant action in the State Court of Bibb County seeking $10 million in damages. The plaintiffs were represented by, inter alia, the law firm of Collins & Wichrowski. As to Loyal's cause of action, Norfolk Southern filed a motion for summary judgment, asserting that Loyal's claim was barred by the release he signed at the time he accepted the railroad's early retirement compensation package. The trial court agreed and granted summary judgment to Norfolk Southern. *Held*:

In a FELA case, federal law governs substantive issues as to the validity of a release. *Dice v. Akron &c. R. Co.*, 342 U. S. 359, 361 (72 SC 312, 96 LE 398) (1952); *Eubanks v. CSX Transp.*, 223 Ga. App. 616, 617 (478 SE2d 387) (1996). The party attacking the release "must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Callen v. Pennsylvania R. Co.*, 332 U. S. 625, 630 (68 SC 296, 92 LE 242) (1948); *Eubanks v. CSX Transp.*, supra at 618.

Here, however, Loyal does not claim fraud, mutual mistake, or lack of consideration. He concedes that he knowingly and voluntarily

---

[2] At the time of this action, Loyal receives $1,500 per month in disability retirement benefits.

signed the release in exchange for the $50,000. Instead, Loyal claims that the release is void as a matter of law because it serves to exempt Norfolk Southern from FELA liability which is proscribed by 45 USC § 55, which states: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act [cit.], shall to that extent be void."

While Loyal recognizes that under federal law a release of a FELA claim may act as a bar to subsequent litigation of that claim, Loyal maintains that such a release is valid only as to claims regarding injuries which are known at the time the release is executed and cannot serve to exempt an employer from liability for an injury that was unknown when the release was executed. Although such is not the law under FELA, Loyal argues that a general release is void ab initio to the extent that it applies to an injury unknown at the time of settlement.

The resolution of this case requires a two-prong analysis: (1) whether, as per Loyal's contention, the instant release is invalid as a matter of law when applied to a claim for an injury that was unknown at the time the release was signed; and (2) if the instant release is not invalid as a matter of law when applied to an injury unknown at the time of execution, whether such release applies to Loyal's claim of job-related hearing loss so as to support summary judgment.

1. In *Callen*, the United States Supreme Court refused to invalidate a general release of " 'all claims and demands which I have or can or may have against the said Pennsylvania Railroad Company,' " id. at 626, even though the plaintiff in *Callen* contended that such release "violates § 5 of the Federal Employers' Liability Act."[3] Id. at 630. Further, in *Hogue v. Southern R. Co.*, 390 U. S. 516 (88 SC 1150, 20 LE2d 73) (1968), the Court examined a contract that released an employer for injury in excess of that known at the time the release was signed. The Court determined that there was "no occasion to decide whether the release here involved violated [45 USC § 55]," and the Court specifically noted that a "release may otherwise bar recovery." Id. at 518. These results could not have been obtained if a general release of claims known and unknown is in violation of 45 USC § 55 *as a matter of law*, as argued by Loyal.

As a point of law, we do not agree with Loyal that the validity of a release turns upon the status of a claimed *injury* as known or unknown at the time the release is signed. Instead, we accede to

---

[3] Section 5 of the Employers' Liability Act of April 22, 1908, Ch. 149, 35 Stat. 65. Section 5 was substantively identical to the present § 55.

Loyal's request made during oral argument and find guidance with regard to this issue in the recent Third Circuit case of *Wicker v. Consolidated R. Corp.*, 142 F3d 690 (3rd Cir. 1998). As to a general release regarding claims of injury unknown at the time the release is signed, the *Wicker* court determined that "it is entirely conceivable that both employee and employer could fully comprehend *future risks and potential liabilities* and, for different reasons, want an immediate and permanent settlement. The employer may desire to quantify and limit its future liabilities and the employee may desire an immediate settlement rather than waiting to see if injuries develop in the future. To put it another way, the parties may want to settle controversies about *potential* liability and damages related to *known risks* even if there is no present manifestation of injury." (Emphasis supplied.) *Wicker*, supra at 700-701 (10). Clearly, in an industry, such as the railroad industry, that has a number of known occupational risks and diseases, it is important to both the employer and employee to be able to settle potential claims regarding injuries or diseases prior to actual discovery.

The correctness of an analysis that turns on the known *risk* of injury, as opposed to a known actual injury, is completely supported by the Supreme Court's decision in *Callen*, where the Court held, "It is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent *recognizing its possibility*." (Emphasis supplied.) *Callen*, supra at 631. Under this analysis, a valid release may encompass an injury that is unknown at the time of its execution, if the *possibility* of such injury is known. Accordingly, we hold that the instant release does not violate 45 USC § 55 *as a matter of law* simply because it is applied to a claim for an injury that was unknown at the time the release was signed, if the possibility of such injury was known.[4] In so holding we avoid the set aside of successive settlements of known occupational diseases and repeated litigation when subsequent injuries from such occupational diseases manifest themselves over time.

2. In determining whether the instant release applies to Loyal's claim of job-related hearing loss so as to support summary judgment, we look to the record. "FELA cases are inherently fact-bound. The

---

[4] Only the Sixth Circuit has adopted a bright line rule that a release may be valid *only* with regard to injuries that are known at the time the release is executed. See *Babbitt v. Norfolk &c. R. Co.*, 104 F3d 89 (6th Cir. 1997); *Damron v. Norfolk &c. R. Co.*, 925 FSupp. 520 (N.D. Ohio 1995). The majority of courts have not so found. See *Panichella v. Pennsylvania R. Co.*, 268 F2d 72 (3rd Cir. 1959); *Wilson v. CSX Transp.*, Civil Action No. 91-1398 (W.D. Pa. 1994); *Williams v. Norfolk Southern Corp.*, CA 1:92-CV-545 (N.D. Ga. 1993); *Satterfield v. CSX Transp.*, No. 93-002 (W.D. Va. 1993); *Loose v. Consolidated R. Co.*, 534 FSupp. 260 (E.D. Pa. 1982); see also *Virginia Impression Products Co. v. SCM Corp.*, 448 F2d 262 (4th Cir. 1971).

evaluation of the parties' intent at the time the agreement was made is an essential element of this inquiry." (Citations and punctuation omitted.) *Wicker*, supra at 700 (10). "[T]he meaning to be given to the words of a contract must be the one that carries the intent of the parties as determined by the circumstances under which the contract was made." (Citation and punctuation omitted.) Id.; see also *Driscoll v. Schuttler*, 697 FSupp. 1195, 1203 (N.D. Ga. 1988); see *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 256 (2) (381 SE2d 322) (1989); compare *Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 700 (342 SE2d 308) (1986).

(a) We conclude that, on its face, the release signed by Loyal was an unambiguous compromise and settlement of all claims for injuries known or unknown that may arise under the Act. Norfolk Southern paid Loyal the sum of $50,000 in "recognition of the possibility" of claimed liability under the Act for known risks of injury. *Callen*, supra at 631; *Panichella v. Pennsylvania R. Co.*, 268 F2d 72 (3rd Cir. 1959).

Unlike the cases upon which he relies, Loyal was not required, tangentially, to sign the instant release in order to enjoy other, unrelated benefits of employment, such as employment relief fund benefits or entitlement to living expenses.[5] The record shows that Loyal qualified for immediate retirement benefits because of his medical disability without signing the release. The "early retirement" benefits package was in addition to such medical disability retirement.

Also, because early retirement is a choice that results in the cessation of employment, seeking a settlement of all employment-related claims through the signing of a release was neither unrelated, unreasonable, nor tangential to the purpose for offering and accepting the early retirement option.

(b) Loyal does not contend that he was unaware at the time the release was signed that it encompassed all claims of injury both known and unknown, as specifically and unambiguously stated in the contract. In fact, since there were no known injuries at the time the release was signed, Loyal cannot and does not contend that the language of the release addressed any actual injury. This fact serves to underscore the parties' understanding that the release was in settlement of injuries unknown at the time of signing.

We are not persuaded by Loyal's argument, apparently made for the first time before this Court, that the $50,000 was in consideration

---

[5] See *Philadelphia &c. R. Co. v. Schubert*, 224 U. S. 603 (32 SC 589, 56 LE 911) (1912); *Duncan v. Thompson*, 315 U. S. 1 (62 SC 422, 86 LE 575) (1942); *Baltimore &c. R. Co. v. Gawinske*, 197 F 31 (3rd Cir. 1912). The cases cited by Loyal involve instruments which, tangentially to other purposes, attempted to exempt the employer from liability under FELA with no suitable specific consideration therefor.

for surrendering his right of employment, especially when the language of the release specifically states that the $50,000 was in consideration of surrender of employment *and* release of any claims known or unknown connected with his employment. Further, as reflected in his own testimony, Loyal "surrendered his right of employment" when he decided to take medical disability retirement, which was not contingent upon accepting the early retirement option. It appears he signed the release of all claims in order to obtain the $50,000.

(c) We find that hearing loss was a risk known and foreseeable to Loyal at the time he signed the release. Notably, although Loyal contends that he was unaware of any hearing loss at the time he signed the release, Loyal has never contended that he was unaware of the *risk* of hearing loss at the time he signed the release. In fact, Loyal was well aware that he was exposed to excessive noise on the job and complained about such to a railroad superintendent. In that regard, Loyal had regular hearing tests as a part of his employment and testified that "it was normal every — seems like it was every three years or something you had to do an annual thing such as this [audiogram hearing test] or something." Thus, if the actual hearing loss, itself, was not apparent to Loyal at the time he signed the release, certainly the issue of potential hearing loss was, which issue was brought home to Loyal by repeated mandatory hearing tests.

Moreover, Loyal was a railroad union member and attended railroad safety meetings. Both Loyal and the railroad knew of the risk of hearing loss to engineers. As was acknowledged during oral argument before this Court, by the time of Loyal's retirement, hearing loss had been a safety issue in the railroad industry for many years.[6] In fact, at the time of Loyal's retirement, cases involving hearing loss as a result of railroad employment were legion all over the country.[7] Accordingly, under the facts of this case, job-related hearing loss was a risk known to Loyal at the time he signed the release.

(d) "The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall

---

[6] See, e.g., 49 Code of Federal Regulations § 229.121, Locomotive Cab Noise, amended in 1980 in response to repeated safety concerns in order to regulate permissible exposure to continuous noise in a locomotive cab.

[7] See, e.g., *Jones v. Maine Central R. Co.*, 690 FSupp. 73 (D. Maine 1988) (27 plaintiffs sought recovery for hearing loss); *Campbell v. Consolidated R. Corp.*, Civ. A. No. 87-2312 (E.D. Pa. 1988) (38 plaintiffs brought suit for hearing loss); see also *Singleton v. Consolidated R. Corp.*, C-1-85-119 (S.D. Ohio 1986); *Stokes v. Union Pacific R. Co.*, 687 FSupp. 552 (D. Wyoming 1988); *Courtney v. Union Pacific R. Co.*, 713 FSupp. 305 (E.D. Ark. 1989); *Colley v. Burlington Northern R. Co.*, No. 88-1088-CV-W-9 (W.D. Missouri 1990); *Kragel v. Long Island R. Co.*, No. 88-Civ. 4800 (S.D. N.Y. 1990).

be enforced irrespective of all technical or arbitrary rules of construction." OCGA § 13-2-3; *Virginia Impression Products Co. v. SCM Corp.*, 448 F2d 262 (4th Cir. 1971). If the terms of a release are unambiguous, the legal effect of the language is a question of law to be resolved summarily. *Travelers Ins. Co. v. Blakey*, supra at 700; *Westminster Group v. Perimeter 400 Partners*, 218 Ga. App. 293, 294 (1) (460 SE2d 827) (1995).

In the present case, the unambiguous language of the release evinces a clear intent to settle and release liability for "any claim . . . demand, action or cause of action, of any kind whatsoever, known or unknown" arising out of or connected with Loyal's employment with Norfolk Southern. Loyal has the burden to demonstrate that the release is invalid as to his claim of hearing loss. *Callen*, supra at 630; *Eubanks v. CSX Transp.*, supra at 618. He has not done so. Consequently, the trial court did not err in granting summary judgment to Norfolk Southern.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 2, 1998 —
RECONSIDERATION DENIED OCTOBER 14, 1998 — 

*Edward S. Cook, Lawrence H. Cooper*, for appellant.
*Hall, Bloch, Garland & Meyer, Mark E. Toth, Kimberly C. Harris*, for appellees.