# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KENNETH J. WHETZEL, Personal Representative for the Estate of RICHARD L. WHETZEL, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| | ) | C.A. No.: N21C-12-048 FJJ |
| v. | ) ) | |
| PENN CENTRAL CORPORATION a/k/a AMERICAN PREMIER UNDERWRITERS, INC., et al. | ) ) ) ) ) | |
| Defendants. | ) | |

Submitted: June 24, 2025
Decided: June 26, 2025

## OPINION AND ORDER
*on Defendant APU Consolidated, Inc.'s Motion for Summary Judgment*

## DENIED

*Michael Silverman, Esquire,* Silverman, McDonald & Friedman, Wilmington, Delaware, and *Thomas J. Joyce, III, Esquire* (Pro Hac Vice), Bern Cappelli, LLC, Conshohocken, Pennsylvania, *Attorneys for Plaintiff.*

*Anna Currier, Esquire and James Gorman, III, Esquires,* Blank Rome, LLP, Wilmington, Delaware, *Daniel L. (Casey) Jones, Jr., and Sarah Tankersly, Esquires* (Pro Hac Vice), Blank Rome LLP, Cincinnati, Ohio, *Attorneys for Defendant APU Consolidated, Inc.*

*Patrick K. Gibson, Esquire*, Landman, Corsi, Ballaine, & Ford, Wilmington, Delaware and *Andrew J. Kornblau, Esquire* (Pro Hac Vice), Landman, Corsi, Ballaine, & Ford, Philadelphia, Pennsylvania, *Attorneys for Defendant National Railroad Passenger Corp.*

**Jones, J.**

Plaintiff Kenneth J. Whetzel, Personal Representative for the Estate of Richard L. Whetzel ("Richard") alleges that Richard developed non-Hodgkins lymphoma as a result of his exposure to certain substances during his railroad employment with Penn Central and National Railroad Passenger Corporation ("Amtrak").[1] Plaintiff seeks compensation for these alleged injuries under the Federal Employers' Liability Act ("FELA").

In 1984, Richard brought a lawsuit against his railroad employers alleging that workplace exposures to asbestos injured him and caused a debilitating fear of developing cancer. Richard settled his 1984 lawsuit and executed a release in 1987.

APU has filed the instant Motion for Summary Judgment. APU maintains that the 1987 release bars the instant claims. Plaintiff opposes. This is the Court's decision on APU's Motion for Summary Judgment.

## FACTS

In 1984, Richard brought a lawsuit under the FELA against his railroad employers alleging that workplace exposures to asbestos caused him harm and a fear of developing cancer. In 1987, Richard settled his FELA claim. As part of that settlement, Richard executed a release. The Release provided in relevant part:

---

[1] Plaintiff has settled with Amtrak. The remaining Defendant American Premier Underwriters Inc. is the successor name for Penn Central.

**RELEASE AGREEMENT**

KNOW ALL MEN BY THESE PRESENTS that I, <u>RICHARD WHETZEL</u> , being of lawful age and sound mind, for the sole consideration of <u>ONE HUNDRED TWENTY FIVE THOUSAND DOLLARS ($125,000)</u>  to me in hand paid, receipt of which is hereby acknowledged, do hereby release and hereby discharge Consolidated Rail Corporation, individual and/ or successor-in-interest or liability to any other entity, Penn Central Corporation, Penn Central Transportation Company Trustees of the property of the Penn Central Transportation Company, New York Central Railroad, the Pennsylvania Railroad, Lehigh Valley Railroad and/or the National Railroad Passenger Corporation and all other related persons and corporations, and their present and former insurers, owner, heirs, executors, administrators, subsidiaries, division, predecessors-in-business-or-interest, successors-in-business-or-interest, directors, officers, attorneys medical personnel, employees and assigns (hereinafter referred to as "RELEASEES") of and from any and all losses, claims, liabilities, actions, causes of action, judgments, verdicts, awards, costs, attorneys fees and demands of whatsoever kind or nature (including but not limited to compensatory and punitive) which I have or to which I claim to be entitled by reason of any injuries, known or unknown, foreseen or unforeseen (including but not limited to pulmonary disorders of any type; pleural plaque(s) or thickening; fibrosis of any kind; asbestosis; cancer(s) of any type, origin or nature; death; anxiety or fear of contracting cancer or some other physical condition; and/or any increased risk of contracting cancer) which now exist or which may arise in the future as a result of or in any way connected with my alleged exposure to any material, substance, product and/or good(s) of any kind or nature (including but not limited to dust, fumes, vapors, mists, gases, agents, asbestos or toxic substances of any kind) supplied or permitted to exist by RELEASEES, and/or any arising out of or which may arise out of any working condition, of any kind, during my employment by RELEASEES including, but not limited to, exposure to or any working condition or environment created by existence of any dust, fumes, vapors, mists, gases,

3

agents, asbestos or toxic substances of any kind and/or any material, substance, product or working condition(s) generally and as particularly set forth in any Complaint and other pleadings filed in any lawsuit(s) instituted in a court of competent jurisdiction or any proceeding, administrative or quasi judicial.

I hereby declare and represent that the injuries and illnesses which have been or may be sustained, including metal conditions resulting from asbestos exposure or exposure to any substance, condition or environment or belief that I was exposed to asbestos, or any substance, condition or environment, are, or may be permanent, and that recovery therefrom is uncertain and indefinite, and that they may cause or lead to other deleterious conditions, including but not limited to cancer, and that in making this Release, it is understood and agreed that I rely wholly upon my own judgment, belief, and knowledge of the nature, extent, effect, duration and other possible results of said injuries, illnesses, conditions, exposures, and liability therefore, and that this Release is made without reliance upon any statement or representation by the RELEASEES or their representatives, the making of any such statements or representations being specifically denied and that possible future conditions, as yet undetected, including but not limited to cancers of any kind, are included.[2]

## STANDARD OF REVIEW

Superior Court Civil Rule 56(c) states a party seeking summary judgment must show "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] The court views the evidence provided "in the light most favorable to the non-moving party."[4] The initial burden

---

[2] Docket Item ("D.I") 102 Exhibit ("Ex.") E.
[3] Del. Super. Ct. Civ. R. 56(c).
[4] *Garvin v. Booth*, 2022 WL 247696, at *7 (Del. Super. Jan. 27, 2022).

is on the moving party to show there are no genuine issues of material fact.[5] The burden then shifts to the non-moving party to show there is at least one material issue of fact in dispute.[6] The non-moving party must furnish "evidence of a material fact in dispute that are [sic] sufficient to withstand a motion for judgment as a matter of law and to support the verdict of a reasonable jury."[7] The court must "accept all undisputed factual assertions and accept the nonmoving party's version of any disputed facts."[8] However, any factual inferences made in favor of the non-moving party must be reasonable.[9]

## ANALYSIS

This is not this Court's first venture into the world of the FELA and the issue of releases under the FELA. In *Reed v. BNSF Railway Company*, President Judge Davis had occasion to address the issue. [10] In his usual thorough and scholarly way, President Judge Davis did an exhaustive analysis of the legal principles underlying the instant issue. In *Reed*, Judge Davis wrote:

> The validity of a release under FELA raises a federal question to be determined by federal law.[11] The party attacking a FELA release bears the burden of establishing that the release is invalid.[12] Congress sought to prevent railroad employers from contracting out of FELA

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Coker v. Tenney-Andrews*, 2016 WL 6659500, at *2 (Del. Super. Nov. 10, 2016).
[9] *Smith v. Haldeman*, 2012 WL 3611895, at *1 (Del. Super. Aug. 21, 2012).
[10] 2020 WL 6392866 (Del. Super. Nov. 2, 2020).
[11] *Dice v. Akron, C. & Y. R.R. Co.,* 342 U.S. 359, 361 (1952)
[12] *See, e.g., Jaqua v. Canadian Nat. R.R., Inc.,* 734 N.W.2d 228, 232 (Mich.Ct.App.2007); *Loyal v. Norfolk Southern Corp.,* 507 S.E.2d 499, 504 (Ga.Ct.App.1998).

5

liability by passing 45 U.S.C. §55 (referred to as §5 of FELA), as many railroads had insisted on contracts with their employees that discharged the company from liability for personal injuries.[13] Section 5 of FELA provides, in relevant part:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void ....[14]

Mr. Reed argues that the Release executed by Mr. Blackmon is unenforceable due to §5 of FELA.

Despite the seemingly broad language of this section, the United States Supreme Court made clear long ago that releases are not *per se* invalid under §5 of FELA. In *Callen v. Pennsylvania Railroad Co.,*[15] a railroad employee executed a release when he settled a claim against the railroad arising out of a back injury. In exchange for $250, the employee released all claims and demands against the railroad that the employee had at that time, or could have in the future, for injuries sustained in an alleged accident.[16] The employee later filed a FELA action based on the back injury he sustained in the accident. He acknowledged that he read and understood the release, knew what he was doing, and intended to waive any further claim.[17] However, he argued that the release violated §5 of FELA because it enabled the railroad to "exempt" itself from liability.[18] The United States Supreme Court dismissed this argument without much discussion, simply stating:

It is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility. Where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation.[19]

---

[13] *Wicker,* 142 F.3d at 696 (citing to H.R. Rep. 1386, 60th Cong. 1st Sess. 6 (1908)).
[14] 45 U.S.C. § 55.
[15] 332 U.S. 625, 626–27, (1948).
[16] *Id.*
[17] *Id.* at 627.
[18] *Id.* at 630-31.
[19] *Id.* at 631.

*Cullen* clarifies that "a release of FELA claims can have the same effect as any other release, in that it may constitute a settlement or compromise, rather than an attempt to escape liability."[20]

As mentioned above, the Third Circuit Court of Appeals considered the validity of FELA releases in *Wicker*. In *Wicker,* the plaintiff employees had executed releases in the past in connection with the settlement of claims for various injuries, such as asbestos-related injuries and back injuries.[21] The releases purported to release the railroad from liability for all injuries, past and future, relating to their employment.[22] The plaintiffs then sued under FELA, alleging that they were injured by exposure to hazardous and toxic substances during their employment.[23] The plaintiffs argued that the general releases they executed were void pursuant to § 5 of FELA. The plaintiffs contended that a FELA release could only compromise a claimed liability, and therefore, it could not release claims they did not know existed.[24] They claimed they were unaware of their present injuries at the time of the releases, and they offered supporting affidavits from the attorneys who represented them at the time.

At the outset, the *Wicker* Court recognized that, according to *Callen,* releases are not *per se* invalid under FELA.[25] The Court said that although the *Callen* Court did not explain what will qualify as a permissible "compromise" of a claimed liability, "it did say that parties may settle '[w]here controversies exist as to whether there is liability, and if so for how much.' The explicit requirement is that a controversy must exist."[26]

The *Wicker* court surveyed other decisions since *Callen* and noted that the courts had varying results—some held that general releases of all claims did not contravene the purposes of FELA and could bar a subsequent claim, while others had refused to enforce them.[27] The

---

[20] *Babbitt,* 104 F.3d at 92 (citing *Callen*).
[21] 142 F.3d at 692-93.
[22] *Id*. at 693.
[23] *Id*. at 694.
[24] *Id*. at 695.
[25] *Id*. at 697.
[26] *Id*.
[27] *Id*. at 699.

*Wicker* court acknowledged the Sixth Circuit's recent holding in *Babbitt* that "appear[ed] to establish a broad, legal rule prohibiting the use of general releases in cases such as this."[28] The *Wicker* court noted that the releases in *Babbitt* were executed as part of an early retirement program, offered to all employees on a take-it-or-leave-it basis, rather than the result of a compromise of claims.[29] In *Wicker*, however, "the releases…were all negotiated as part of the settlement of an existing claim—each was the result of arms-length bargaining between the plaintiff, his counsel, and the defendant railroad."[30] In order to be valid, a FELA release "…must at least have been executed as part of a negotiation settling a dispute between the employee and the employer."[31] The *Wicker* court explained that FELA cases are inherently fact-bound, and "[t]he evaluation of the parties' intent at the time the agreement was made is an essential element of this inquiry."[32] "[T]he 'meaning to be given to the words of a contract must be the one that carries the intent of the parties as determined by the circumstances under which the contract was made.'"[33]

After extensively reviewing additional relevant caselaw, the *Wicker* court concluded, "[t]he question remains whether there is a way to protect employees' statutory rights while also upholding the parties' right to settle claims by contract."[34] *Id.* The Court explained its decision as follows:

A bright line rule like the one set forth in *Babbitt,* limiting the release to those injuries known to the employee at the time the release is executed, has the benefit of predictability. Under *Babbitt,* "a release must reflect a bargained-for-settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him." 104 F.3d at 93.

Yet, it is entirely conceivable that both employee and employer could fully comprehend future risks and potential liabilities and, for

---

[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.* at 700.
[32] *Id.*
[33] *Id.* (quoting *Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 263 (6th Cir.1988)).
[34] *Id.*

different reasons, want an immediate and permanent settlement. The employer may desire to quantify and limit its future liabilities and the employee may desire an immediate settlement rather than waiting to see if injuries develop in the future. To put it another way, the parties may want to settle controversies about potential liability and damages related to known risks even if there is no present manifestation of injury.

The question still remains whether a rule allowing parties to release claims related to known risks rather than known injuries reflects FELA's remedial goals. We believe it does. We hold that a release does not violate § 5 provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those risks which are known to the parties at the time the release is signed. Claims relating to unknown risks do not constitute "controversies," and may not be waived under §5 of FELA. See *Callen,* 332 U.S. at 631, 68 S.Ct. at 298–99. For this reason, a release that spells out the quantity, location and duration of potential risks to which the employee has been exposed—for example toxic exposure—allowing the employee to make a reasoned decision whether to release the employer from liability for future injuries of specifically known risks does not violate §5 of FELA.

To the extent that a release chronicles the scope and duration of the known risks, it would supply strong evidence in support of the release defense. But we are wary of making the validity of the release turn on the writing alone because of the ease in writing detailed boiler plate agreements; draft releases might well include an extensive catalog of every chemical and hazard known to railroad employment. For this reason, we think the written release should not be conclusive. We recognize that what is involved is a fact-intensive process, but trial courts are competent to make these kinds of determinations. While the elusiveness of any such determination might counsel in favor of a bright-line rule such as the Sixth Circuit adopted in *Babbitt,* we decline to adopt one here.

Instead, we conclude that a release may be strong, but not conclusive, evidence of the parties' intent. Where a specific known risk or malady is not mentioned in the release, it would seem difficult for the employer to show it was known to the employee and that he or she

intended to release liability for it. Furthermore, where a release merely details a laundry list of diseases or hazards, the employee may attack that release as boiler plate, not reflecting his or her intent. We recognize that this is a different (and more difficult) standard for railroad employers than is typical in non-FELA situations, but given the Supreme Court's pro-employee construction of the FELA, [citations omitted], we adopt it.[35]

Applying these standards to the releases before it, the *Wicker* court found each of the releases invalid.[36] Even though the releases were executed in the context of settling previous claims, the issue of the parties' intent was problematic.[37]

The language of the *Wicker* releases appeared to recite standard waiver of liability provisions, which did not demonstrate that the parties understood, addressed or discussed the scope of the waived claims. The record failed to indicate whether the parties negotiated any part of the releases other than the settlement amount. Some of the releases were detailed broad releases that attempted to cover all potential liabilities, reciting a series of generic hazards rather than specific risks the employees faced during the course of their employment. For example, some of the releases referenced injuries from "dust, fumes, vapors, mists, gases, agents, asbestos or toxic substances of any kind."[38] However, the releases did not demonstrate the employees knew of the actual risks to which they were exposed and from which the employer was being released.[39] In fact, the plaintiffs testified that they were not aware of the associated risks of the chemicals used at their employer's facility.[40]

The *Wicker* court, therefore, found no evidence that the plaintiffs, "despite being represented by counsel," were aware of the potential health risks to which they had been exposed.[41] The *Wicker* court held that the releases violated FELA because they purported to settle all

---

[35] *Id.* at 700-01.
[36] *Id.* at 701.
[37] *Id.*
[38] *Id.* at 693.
[39] *Id.* at 701.
[40] *Id.* at 702.
[41] *Id.*

claims regardless of whether the parties knew of the potential risks.[42] It appears that, under *Wicker,* "a valid release may encompass an injury that is unknown at the time of its execution, if the possibility of such injury is known."[43]

The Court adopts the test set out in *Wicker*. This mean the Release is strong, but not conclusive, evidence of the parties' intent. The Release, however, does not detail specific known risks or maladies. Much of the Release seems to use "boilerplate" language.[44] The Court has been presented with no facts showing that the parties negotiated any part of the releases other than the settlement amount. As such, BNSF argument that the Release was intended to release the specific claims asserted in the Complaint seems factually incomplete.[45]

As an initial matter, Plaintiff concedes that his claim is not based on his exposure to asbestos. This concession obviously comes from a recognition that to make such a claim would present an uphill battle in the face of the 1987 release and the evidence surrounding the execution of that release that has been presented. To avoid any doubt, this Court grants summary judgment as it relates to any claim based on exposure to asbestos.

Plaintiff acknowledges that his instant claims are limited to his exposure to diesel exhaust and benzene which plaintiff says proximately caused the development of Non-Hodkins Lymphoma ("NHL"). Plaintiff maintains that the 1987 release is by its terms limited to his exposure to asbestos, and it is therefore

---

[42] *Id.*
[43] *Loyal,* 234 Ga.App. at 701, 507 S.E.2d at 502.
[44] *Wicker*, 142 F.3d 690, 701 (3d. Cir. 1998).
[45] *Reed*, 2020 WL 6392866, at *3-6.

invalid under Section 55 of the FELA as it attempts to preclude Richard from bringing any future claim for injuries caused by occupational exposure to any "material, substance, product, and/or goods of any kind or nature." APU opposes arguing that the release does not violate Section 55 and bars Plaintiff's claims since the release talks about cancer risk.

The 1987 release signed by Richard identifies asbestos as the substance Richard was exposed to. The release specifically addresses lung disorders and cancers that are related to asbestos exposure. The release does not detail specific known risks or maladies beyond those associated with asbestos exposure. This is not surprising given that asbestos exposure was the basis of Richard's 1984 FELA claim. This fact is clear not only from the release itself but from the transcripts of the trial attached to APU's instant Motion[46] and Plaintiff's Response[47] that the claim being released was a claim based on asbestos exposure.

The language relied upon by APU to support its argument appears to the Court to be boilerplate language which under the law is insufficient for the release to be effective as to the nonasbestos claims.[48] The Court finds that release as to nonasbestos related claims is invalid pursuant to Section 55 of the FELA.[49] The release does not demonstrate Richard knew of the actual risks to which he was

---

[46] D.I. 102.
[47] D.I. 112.
[48] *Reed*, 2020 WL 6392866, at *6.
[49] 45 U.S.C. § 55.

12

exposed and from which the employer was being released. As in *Wicker*, Richard's release in this case lists a broad range of generic hazards that the plaintiff may have been exposed to and claims to release all injuries related to these unenumerated risks and exposure. The *Wicker* release stated the following:

> …by reason of any injuries, known or unknown, foreseen or unforeseen…which now exist or which may arise in the future as a result of or in any way connected with my alleged exposure to any material, substance, product, and/or good(s) of any kind or nature (including but not limited to dust, fumes, vapors, mists, gases, agents, asbestos or toxic substances of any kind) supplied or permitted to exist by [Conrail], and/or arising out of any working condition, of any kind, during my employment by [Conrail]…[50]

Similarly, the release in this case listed the following injuries from which APU asserts it is released:

> …by reason of any injuries, known or unknown, foreseen or unforeseen (including but not limited to pulmonary disorders of any type; pleural plaque(s) or thickening; fibrosis of any kind; asbestosis; cancer(s) of any type, origin or nature; death; anxiety or fear of contracting cancer or some other physical condition; and/or any increased risk of contracting cancer) which now exist or which may arise in the future as a result of or in any way connected with my alleged exposure to any material, substance, product and/or good(s) of any kind or nature (including but not limited to dust, fumes, vapors, mists, gases, agents, asbestos or toxic substances of any kind) supplied or permitted to exist by RELEASEES, and/or any arising out of or which may arise out of any working condition, of any kind, during my employment by RELEASEES …[51]

---

[50] *Wicker v. Consol. Rail Corp.*, 142 F.3d 690, 693 (3d. Cir. 1998).
[51] D.I. 102 Ex. E.

Also, as was the case in *Wicker*, the instant release fails to demonstrate that Richard was aware of the actual risks to which he was exposed and what the employer was being released from.

APU has directed the Court to the recent decision in *Hughes v. APU Consolidated, Inc., et. al.*[52] and argues that the Court should follow the *Hughes*. Not so. The release in *Hughes* was based on Hughes' exposure to diesel exhaust which was specifically included in the plain language of the prior release. Richard's release does not identify diesel exhaust specifically and does not mention benzene at all. The only specific reference or distinct mention of a toxin is to asbestos. This fact also leads to the conclusion that the 1987 release only released asbestos-related claims per the requirements of Section 55.[53]

For the above reasons, Defendant APU Consolidated, Inc.'s Motion for Summary Judgment based on a prior release is **DENIED**.

**IT IS SO ORDERED**.

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

cc:    File&ServeXpress

---

[52] 2025 WL 1409376 (Md. App. Ct. 2025).
[53] 10 U.S.C. § 55.

14